UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DOMINICK VOLINO and JOHN PLOTTS,
on behalf of themselves and all
others similarly situated.

     Plaintiffs,

               -v-                                      Case No. _____

PROGRESSIVE CORPORATION,

     Defendant
----------------------------------------------------------X

## CLASS ACTION COMPLAINT

     Dominick Volino and John Plotts ("Plaintiffs") bring this class action on behalf of themselves and all others similarly situated, by and through undersigned counsel, and for their Complaint against Progressive Corporation d/b/a Progressive and Progressive Group of Insurance Companies ("Progressive" or "Defendant") states and alleges as follows:

## INTRODUCTION

     1.     This is a class action on behalf of Plaintiffs and all other similarly situated claimants in New York who received a payment for the loss of a totaled vehicle from Progressive, where Progressive used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value of the loss vehicles. By using these valuation reports, Progressive systemically thumbs the scale when calculating the actual cash value of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Progressive's vendor Mitchell; and (e) on information and belief, not applied by Progressive and Mitchell to insureds in other states like California.

1

2. When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the actual cash value of the vehicles. Specifically, under its insurance policy terms and applicable New York law, Progressive has a duty to pay, and represents that it will pay, the actual cash value of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Progressive fails to fulfill this obligation by using a valuation process that employs improper and unreasonable adjustments to reduce the value of comparable vehicles specified in the valuation reports, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured.

3. Specifically, Progressive, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the actual cash value of Plaintiffs' and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit 1 at p. 7; Exhibit 2 at p. 8.

4. This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through the systemic use of these invalid and deceptive adjustments, which benefits the insurer at the expense of the insured, violates Progressive's policies with its insureds and New York General Business Law § 349 ("GBL").

## JURISDICTION AND VENUE

5. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiffs and the proposed class members are citizens of the State of New York. Defendant is a Delaware Corporation that has its corporate headquarters in Mayfield Village, OH, and, at all relevant times hereto, was engaged in the business of providing automobile valuation services and software to companies operating in the State of New York.

6. Plaintiffs estimate that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustments that were deceptively deducted), claimed by Plaintiffs and the Class are estimated in good faith to exceed $5,000,000.

7. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in this District. Defendant transacts business in this District and both Defendants reside in this District.

## PARTIES

8. Plaintiff Dominick Volino resides in Dutchess County, New York. On or about January 12, 2021, Plaintiff Volino was in a car wreck with a Progressive insured, and Progressive deemed his vehicle to be a total loss.

9. Plaintiff John Plotts resides in Wayne County, New York. At all relevant times, Plaintiff Plotts was contracted with Progressive for automobile insurance. On or about September 22, 2020, Plaintiff Plotts was in a car wreck and Progressive deemed his vehicle to be a total loss.

10. Defendant Progressive Corporation has its corporate headquarters located at 6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143. According to its website[1], Progressive

---

[1] https://www.progressive.com/auto/.

Corporation conducts business in New York and throughout the country under the brand Progressive or the Progressive Group of Insurance Companies, underwriting auto insurance to over 20 million drivers countrywide. In its 2019 Annual Report, Progressive reported $37.6 billion in net premiums written by Progressive Corporation. Exhibit 3 at p. 2. In the state of New York, Progressive underwrites auto insurance in coordination with various subsidiaries, all of which are registered with the New York Department of Financial Services under the same Group Number (155), Group Name (Progressive Group), with the same website (https://www.progressive.com), and the same address (6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143). These Progressive Group entities include: Progressive Casualty Insurance Company, Progressive Advanced Insurance Company, Progressive Specialty Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Direct Insurance Company, and Progressive Northern Insurance Company.

11.     Upon information and belief, Progressive performs all material insurance operations related to auto insurance policies underwritten by it and its subsidiaries. Most relevant to this action, Progressive adjusts total loss automobile claims made on policies of insurance issued by it and any subsidiary in New York, pursuant to the same policies and practices, by the same adjustor employees working in the same claims centers, utilizing a single website (www.progressive.com), and using the same address, telephone number, and letterhead on correspondence. Progressive Corporation recruits claims representatives and other employees in New York through its website. *See* Exhibit 4. Those job postings refer throughout to "Progressive" as the entity advertising for employment. *Id.*

12.     As detailed at the Progressive website, Progressive investigates, handles, and adjusts all insurance claims using the same policies and procedures, regardless which Progressive

subsidiary was involved with Progressive in issuing the relevant policy. *See* Exhibit 5. These common policies and procedures, implemented by the same adjustor employees, apply specifically to the adjustment of claims for actual cash value when a total loss is covered by the policy. *Id.*

13. Upon further information and belief: (a) Progressive is the custodian of record for Progressive Corporation and all its subsidiaries; (b) Progressive maintains claim information for all auto claims within the same computer systems, regardless whether any other subsidiary is or is not involved in the underwriting and issuance of the relevant policy; (c) Progressive employed and paid the adjusters who adjusted Plaintiffs' and the putative Classes' total loss claims; (d) Progressive (on behalf of all subsidiaries) entered into a single contract with Mitchell to determine actual cash value covering all claims involving or related to Progressive insureds; and (e) Progressive was directly involved in the wrongdoing alleged herein as the adjustor of the total loss claims.

14. Consistent with marketing, selling, and adjusting insurance under the same Progressive trademark, out of the same corporate headquarters and regional offices, and via the same website (www.progressive.com), Progressive Corporation issues and underwrites insurance policies with no material differences relevant to the claims in this action, regardless whether any other subsidiary is or is not involved in the underwriting and issuance.

15. Consistent with these claim practices, each of the Plaintiffs' valuation reports refer only to the Progressive Group of Insurance Companies. Exhibits 1 & 2. Similarly, Plaintiff Plotts's Settlement Summary only references the Progressive Group of Insurance Companies. Exhibit 6.

**FACTUAL ALLEGATIONS**

16. On January 12, 2021, Plaintiff Volino was involved in a car wreck and sustained physical damage to his vehicle. The driver of the other vehicle had a policy of insurance issued by Progressive.

17. On September 22, 2021, Plaintiff Plotts was involved in a car wreck and sustained physical damage to his vehicle. At that time of the car wreck, Plaintiff Plotts was contracted with Progressive for automobile insurance.

18. Like all members of the putative Class, each Plaintiff made a property damage claim to Progressive.

19. Progressive declared both Plaintiffs' vehicles to be a total loss and purported to offer each of them the actual cash value of their loss vehicles, as it promised and represented it would under the uniform provisions of its insurance policies and New York law.

20. When calculating its valuations and claims payments, Progressive systemically employs a routine total loss settlement process. The settlement process has no material differences relevant to this action, regardless whether it involves first-party or third-party claimants. *See*, e.g. Exhibit 5. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Progressive provided a Mitchell Vehicle Valuation Report for Mr. Volino on January 21, 2021. *See* Exhibit 1. Similarly, Progressive provided a Mitchell Vehicle Valuation Report for Mr. Plotts on September 28, 2020. *See* Exhibit 2.

21. The Mitchell Vehicle Valuation Reports used by Progressive during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same

format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit 1 at p. 7; Exhibit 2 at p. 8.

22.     In addition, however, the valuation reports used by Progressive make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff Volino, Projected Sold Adjustments in the amounts of -$707.00, -$342.00, and -$707.00, respectively, were applied to each of the three comparable vehicles. Exhibit 1 at pp. 5-6. For Plaintiff Plotts, Projected Sold Adjustments in the amounts of -$801.00, -$680.00, and -$927.00, respectively, were applied to each of the three comparable vehicles. Exhibit 2 at pp. 5-6.

23.     Progressive provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiffs' valuation reports.  Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit 1 at p. 7; Exhibit 2 at p. 8.

24.     Progressive's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Progressive does not do what it says it will do – pay actual cash value.  Moreover, as described above, Progressive provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit 1 at p. 7; Exhibit 2 at p. 8.

25. In truth, Progressive's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Progressive assumes always exists without any explanation or support.

26. Progressive's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles. Progressive begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of itself. Progressive documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiffs do not challenge these documented adjustments. At this stage of the process, Progressive abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining actual cash value. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

27. The impropriety and arbitrariness of Progressive's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

28. On information and belief, the impropriety and arbitrariness of Progressive's Projected Sold Adjustments are further demonstrated by the fact that Progressive does not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in New York while not subjecting California claimants to the same negative adjustments.

29. Plaintiffs and each member of the class were damaged by Progressive's application of these Projected Sold Adjustments because they were not paid the actual cash value they would have received had Progressive applied proper methodologies and appraisal standards.

30. Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Progressive for actual cash value. Specifically, for Plaintiff Volino, were it not for this deceptive and improper adjustment, the payment of actual cash value by Progressive would have been $585.33 higher,[2] before adding the related increase in payments for applicable sales taxes. Specifically, for Plaintiff Plotts, were it not for this deceptive and improper adjustment, the payment of actual cash value by Progressive would have been $802.67 higher,[3] before adding the related increase in payments for applicable sales taxes.

---

[2] $585.33 is the average of the Projected Sold Adjustments applied to each of the three comparable vehicles in Plaintiff Volino's valuation report.
[3] $802.67 is the average of the Projected Sold Adjustments applied to each of the three comparable vehicles in Plaintiff Plotts's valuation report.

## CLASS ALLEGATIONS

31.     This action is brought by Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under Rule 23 of the Federal Rules of Civil Procedure, for damages, plus interest, costs, and attorney's fees. Plaintiffs seek certification of this action as a class action on behalf of the following Classes:

> **Breach of Contract Class**: All persons who made a first-party claim on a policy of insurance issued by Progressive Corporation (and any of its subsidiary companies) to a New York resident who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.
>
> **Gen. Bus. Law § 349 Class**: All persons who made a claim on a policy of insurance issued by Progressive Corporation (and any of its subsidiary companies) to a New York resident who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

32.     Plaintiffs reserve the right to amend or modify the Class definition.

33.     Excluded from the Classes are the Defendant, any parent, subsidiary, or control person of the Defendant, as well as the officers and directors of the Defendant and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action.

34.     **Numerosity (Rule 23(a)(1).** The exact number of the Classes, as herein identified and described, is not known, but it is estimated to be in the thousands if not tens of thousands. Accordingly, the Class is so numerous that joinder of individual members herein is impracticable.

35. **Commonality (Rule 23(a)(2)).** There are common questions of law and fact in the action that relate to and affect the rights of each member of the Classes and the relief sought is common to the entire class. In particular, the common questions of law and fact include:

a. Whether Progressive systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine actual cash value;

b. Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Progressive for the actual cash value of Plaintiffs' and Class members' total loss vehicles;

c. Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's actual cash value was deceptive;

d. Whether Progressive's deceptive acts and improper practices injured Plaintiffs and members of the Classes;

e. Whether Progressive's acts violated its obligation under the policy of insurance;

f. Whether Plaintiffs and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

g. Whether Plaintiffs and members of the Classes are entitled to an injunction restraining Progressive's future deceptive acts and practices.

36. **Typicality (Rule 23(a)(3)).** The claims of the Plaintiffs, who are representative of the Classes herein, are typical of the claims of the proposed Classes, in that the claims of all members of the proposed Class, including the Plaintiffs, depend on a showing of the acts of Progressive giving rise to the right of Plaintiffs to the relief sought herein. There is no conflict

between the individually named Plaintiffs and the other members of the proposed Classes with respect to this action, or with respect to the claims for relief set forth herein.

37. **Adequacy (Rule 23(a)(4)).** The named Plaintiffs are the representative parties for the Classes, and are able to, and will fairly and adequately, protect the interests of the Classes. The attorneys for the Plaintiffs and the Classes are experienced and capable in complex civil litigation, insurance litigation, and class actions.

38. **Predominance & Superiority (Rule 23(b)(3)).** Class certification is appropriate under Rule 23 because the common questions of law and fact in this case predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate action is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by class members who claims are too small and complex to individually litigate against a large corporate defendant.

39. **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, making final declaratory or injunctive relief appropriate with respect to the proposed Classes as a whole.

40. **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are

common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
(ON BEHALF OF PLAINTIFF PLOTTS AND MEMBERS OF THE BREACH OF CONTRACT CLASS)

41. Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

42. This cause of action is asserted on behalf of Plaintiff Plotts and members of the Breach of Contract class against Progressive.

43. Plaintiff Plotts made a claim for property damage to Progressive.

44. At the time of that claim, Plaintiff Plotts was party to an insurance contract requiring Progressive to pay insureds the actual cash value of their total loss claim.

45. Before making his claim, and in the time since, Plaintiff Plotts has performed all obligations under his policy of insurance and was entitled to the benefits he contracted for in that policy.

46. Through the use of improper and unfounded Projected Sold Adjustments in Mitchell vehicle valuation reports, as detailed above, Progressive settled Plaintiff Plotts's claim, and the claims of the members of the proposed Breach of Contract Class, for less than the actual cash value required by the insurance contract.

47. As a direct result of Progressive's breaches, Plaintiff Plotts and members of the Breach of Contract Class sustained actual damages. Plaintiff Plotts's damages are at least $802.67 (before calculations of additional sales tax benefits), plus pre-judgment, and post-judgment interest.

**SECOND CAUSE OF ACTION**
**VIOLATION OF N.Y. GEN. BUS. LAW § 349**
(ON BEHALF OF PLAINTIFFS AND MEMBERS OF THE GEN. BUS. LAW § 349 CLASS)

48. Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

49. This cause of action is asserted on behalf of Plaintiffs and members of the Gen. Bus. Law § 349 Class against Progressive.

50. Both Plaintiffs made claims for property damage to Progressive.

51. New York General Business Law § 349(a) provides: "Deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state are hereby declared unlawful."

52. The acts and practices alleged herein are deceptive and were carried out in the conduct of Progressive's business. The use of unfounded and arbitrary Projected Sold Adjustments as a means of undervaluing claimants' total loss claims has the capacity to and does deceive and injure consumers. Progressive does not do what its policy says it will do – pay actual cash value. Moreover, as described above, Progressive provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the vague and unsupported speculation that it purportedly "reflect[s] consumer behavior."

53. Progressive used these unsupported misrepresentations about "consumer purchasing behavior" to systematically undervalue and, in turn, underpay Plaintiffs' total loss claims as well as the total loss claims of members of the proposed Gen. Bus. Law § 349 Class.

54. Progressive used valuation reports that systematically misrepresent and undervalue the actual cash value of claimants' loss vehicles. The reports make Projected Sold Adjustments that are arbitrary and unfounded. These adjustments are used to reduce the valuation of claimants'

14

loss vehicles. Progressive, in turn, uses these reports as the basis for offering claimants what it, deceptively, purports to be the actual cash value of the totaled vehicles.

55. Here, Progressive misrepresented the actual cash value of Mr. Volino's totaled vehicle, paying him at least $585.34 (before calculations of additional sales tax benefits) less than the actual cash value to which he was entitled. Similarly, Progressive misrepresented the actual cash value of Mr. Plotts's totaled vehicle, paying him $802.67 (before calculations of additional sales tax benefits) less than the actual cash value to which he was entitled.

56. As a result of Progressive's actions, Plaintiffs and members of the Gen. Bus. Law § 349 Class incurred damages, including actual damages in the amount their loss vehicle valuations were reduced through the use of Projected Sold Adjustments, applicable tax calculation adjustments, statutory damages under N.Y. Gen. Bus. Law § 349(h) where applicable, treble damages up to $1,000 under N.Y. Gen. Bus. Law § 349(h) where applicable, and pre-judgment interest.

57. Plaintiffs and members of the N.Y. Gen. Bus. Law § 349 Class are entitled to reasonable attorney's fees upon prevailing pursuant to Gen. Bus. Law § 349(h).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a) determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, certify the proposed Classes for class treatment, appoint Plaintiffs as class representatives for each class, and appoint undersigned counsel as Class Counsel;

b) enter an order finding that Progressive's actions described herein constitute breaches of the express terms of its policies of insurance;

c) enter an order finding that Progressive's actions described herein constitute violations of N.Y. Gen. Bus. Law § 349;

d) award Plaintiffs and members of the Classes actual damages according to proof;

e) award Plaintiffs and members of the Gen. Bus. Law §349 Class and Gen. Bus. Law §349 Subclass, alternatively, statutory damages and treble damages up to $1,000 pursuant to N.Y. Gen. Bus. Law § 349(h);

f) enter an injunction restraining Progressive's use of deceptive and unfounded Projected Sold Adjustments in determining the actual cash value of total loss vehicles;

g) award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

h) award reasonable attorney's fees and litigation costs and expenses pursuant to applicable law, including N.Y. Gen. Bus. Law § 349(h); and

i) grant such other legal and equitable relief as the Court may deem appropriate, including specific performance as an alternative to damages.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated: July 22, 2021    Respectfully submitted,

/s/ Thomas M. Mullaney
Thomas M. Mullaney (TM-4274)
THE LAW OFFICE OF THOMAS M. MULLANEY
530 Fifth Ave—23 Floor
New York, NY 10036
Phone: 212-223-0800

Fax: 212-661-9860
tmm@mullaw.org

And

Joseph Henry ("Hank") Bates, III (*pro hac vice* forthcoming)
Lee Lowther (*pro hac vice* forthcoming)
Tiffany Oldham (*pro hac vice* forthcoming)
Jake G. Windley (*pro hac vice* forthcoming)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201
Phone: 501-312-8500
Fax: 501-312-8505
hbates@cbplaw.com

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on July 22, 2021, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide electronic mail notice to all counsel of record.

                                                      */s/ Thomas M. Mullaney*
                                                       Thomas M. Mullaney