UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
DOMINICK VOLINO, JOHN PLOTTS,
KEVIN LUKASIK, LORENZO COSTA,
ZACHARY GOODIER, and JAMES ENGLAND
on behalf of themselves and all
others similarly situated.

    Plaintiffs,

               -v-                                 Civil Action No. 1:21-cv-6243-LGS

PROGRESSIVE CASUALTY INSURANCE
COMPANY, PROGRESSIVE ADVANCED
INSURANCE COMPANY,
PROGRESSIVE MAX INSURANCE
COMPANY, and PROGRESSIVE SPECIALTY
 INSURANCE COMPANY,

    Defendants.
--------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
<u>MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................1

II.  RELEVANT FACTUAL BACKGROUND................................................................4

    A.  Plaintiffs' Total Loss Claims ..............................................................................4

    B.  Allegations as to PCIC.........................................................................................6

    C.  Plaintiffs' Claims ................................................................................................7

III. LEGAL STANDARD..................................................................................................8

IV. ARGUMENT ...............................................................................................................9

    A.  Plaintiff Cannot Collaterally Challenge the Superintendent's Approval of WCTL. ...........9

    B.  Plaintiffs Fail to State a Claim for Violation of N.Y. Gen. Bus. Law § 349 ....................11

       1.  The Third-Party Plaintiffs Cannot Circumvent New York Law Limiting Third-Party Claims Under the Guise of a GBL § 349 Claim. ....................................11

       2.  Plaintiffs' GBL § 349 Claims Fail Because They Are in Substance Claims for Breach of Contract. ..........................................................................13

       3.  Plaintiffs Fail to Plausibly Allege Materially Misleading Conduct............................15

    C.  Plaintiffs Volino, Plotts, Goodier, Costa, and England's Claims Against PCIC Fail........19

V.   CONCLUSION............................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arroyo v. Central Islip UFSD*,
    103 N.Y.S.3d 512 (N.Y. App. Div. 2d 2019) ..........................................................19

*Azby Brokerage, Inc. v. Allstate Ins. Co.*,
    637 F. Supp. 382 (S.D.N.Y. 1986) ...................................................................10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................8

*Brawer v. Johnson*,
    231 A.D.2d 664 (N.Y. App. Div. 2d 1996) .......................................................10

*Capriotti v. Consolidated Rail Corp.*,
    878 F. Supp. 429 (N.D.N.Y. 1995)...................................................................12

*Chatlos v. MONY Life Ins. Co.*,
    298 A.D.2d 316 (N.Y. App. Div. 1st 2002)........................................................10

*In re CIS Corp.*,
    172 B.R. 748 (S.D.N.Y. 1994)..........................................................................12

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)..............................................................................4

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) .............11

*Dimond v. Darden Restaurants, Inc.*,
    No. 13 CIV. 5244 (KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014) ................16

*In re E. N.Y. Savs. Bank Depositors Litig.*,
    547 N.Y.S.2d 497 (N.Y. Sup. Ct. 1989) ...........................................................10

*In re Eastern and Southern Districts Asbestos Litig.*,
    772 F. Supp. 1380 (E.D.N.Y. & S.D.N.Y. 1991) ...............................................15

*Festa v. Westchester Med. Ctr. Health Network*,
    380 F. Supp. 3d 308 (S.D.N.Y. 2019)................................................................8

*Fleisher v. Phoenix Life Ins. Co.*,
    858 F. Supp. 2d 290 (S.D.N.Y. 2012)...............................................................14

*Fosmire v. Progressive Max Ins. Co.*,
  No. C10-5291JLR, 2010 WL 3489595 (W.D. Wash. Aug. 31, 2010) ...................................19

*Frazier v. Coughlin*,
  850 F.2d 129 (2d Cir. 1988)............................................................................................8

*Giannone v. Bank of Am., N.A.*,
  812 F. Supp. 2d 216 (E.D.N.Y. 2011) ...........................................................................2

*Hobish v. AXA Equit. Life Ins. Co.*,
  171 A.D.3d 494 (N.Y. App. Div. 1st 2019)....................................................................15

*Hymes v. Bank of Am., N.A.*,
  408 F. Supp. 3d 171 (E.D.N.Y. 2019) ...........................................................................18

*Lewis v. Hertz Corp.*,
  581 N.Y.S.2d 305 (N.Y. App. Div. 1st 1992)................................................................17

*M.V.B. Collision Inc. v. Allstate Ins. Co.*,
  49 N.Y.S.3d 837 (N.Y. Dist. Co. 2017)........................................................................12

*McNulty v. Polar Corp.*,
  No. 19 Civ. 8903 (LGS), 2020 WL 5658667 (S.D.N.Y. Sept. 23, 2020)...............................19

*Miller v. Wells Fargo Bank, N.A.*,
  994 F. Supp. 2d 542 (S.D.N.Y. 2014)..........................................................................20

*Milligan v. GEICO Gen. Ins. Co.*,
  16-CV-240 (DLI)(RML), 2020 WL 5878406 (E.D.N.Y. Sept. 30, 2020)....................13, 15

*Moore U.S.A., Inc. v. Standard Register Co.*,
  139 F. Supp. 2d 348 (W.D.N.Y. 2001) .........................................................................2, 8

*New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d
  495, 501 (6th Cir. 2003)) ...............................................................................................2

*Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*,
  875 F.3d 107 (2d Cir. 2017)........................................................................................14

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)....................................................................................14, 16

*Oskar v. IDS Prop. Cas. Ins. Co.*,
  No. 09-CV-04516 RRM JO, 2011 WL 1103905 (E.D.N.Y. Mar. 23, 2011) ..........................16

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)..........................................................................................8

*Sands v. Ticketmaster–New York, Inc.*,
    616 N.Y.S.2d 362 (N.Y. App. Div. 1st 1994) ........................................................17

*Shah v. Metro. Life Ins. Co.*,
    No. 108887/00, 2003 WL 728869 (N.Y. Sup. Ct. Feb. 21, 2003) ......................................2, 10

*Shovak v. Long Island Com. Bank*,
    858 N.Y.S.2d 660 (N.Y. App. Div. 2d 2008) ........................................................17

*Sokoloff v. Town Sports Int'l, Inc.*,
    6 A.D.3d 185 (N.Y. App. Div. 1st 2004) ...............................................10, 11, 14

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ...............................................................14

*Varela v. Invs. Ins. Holding Corp.*,
    615 N.E.2d 218 (N.Y. 1993) ..............................................................18

*Walker v. City of New York*,
    974 F.2d 293 (2d Cir. 1992) ...............................................................8

*Zuckerman v. BMG Direct Mktg., Inc.*,
    737 N.Y.S.2d 14 (N.Y. App. Div. 1st 2002) ........................................................17

**Statutes**

N.Y. Gen. Bus. Law § 349 ....................................................................... *passim*

State Insurance Law § 3420 ..........................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................... *passim*

N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(c)(1) (2000) ...........................................2, 6, 9, 10

## I.    INTRODUCTION

Plaintiffs Dominick Volino, John Plotts, Kevin Lukasik, Lorenzo Costa, Zachary Goodier, and James England filed their Second Amended Complaint ("SAC") alleging that Defendants Progressive Max Insurance Company ("Progressive Max"), Progressive Advanced Insurance Company ("Progressive Advanced"), Progressive Specialty Insurance Co. ("Progressive Specialty"), and Progressive Casualty Insurance Company ("PCIC") paid them less than the "actual cash value" of their total-loss automobiles. Specifically, Plaintiffs assert that Defendants used a valuation methodology—a computerized database developed by Mitchell International, Inc. (the "Mitchell Software")—that resulted in underpayment because it applied an allegedly improper "projected sold adjustment" ("PSA") to certain comparable vehicles used to derive the values of Plaintiffs' vehicles.

Based on these allegations, Plaintiffs Plotts, Lukasik, Costa, and Goodier (collectively, the "First-Party Plaintiffs") assert claims for breach of contract and for violation of N.Y. Gen. Bus. Law § 349 ("GBL") against their respective insuring entities. Plaintiffs Volino and England (together, "Third-Party Plaintiffs") on the other hand do not allege they were insured by any of the Defendants. Instead, they were third-party claimants, meaning they were in accidents in which the other drivers were determined to be at fault, and they filed their claims under the at-fault drivers' insurance policies.[1] The Third-Party Plaintiffs only assert a GBL § 349 claim. Each Plaintiff also asserts a claim against PCIC, even though only one of the Plaintiffs—Lukasik—was insured by PCIC.

---

[1] The SAC alleges that Plaintiff England was involved in an accident in which the at-fault driver was insured by Progressive Specialty. SAC ¶ 29. In fact, that driver's policy was issued by Progressive Advanced. *See* Ex. A (Declarations page for third-party driver V. Town).

Plaintiffs' claims fail as matter of law and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

*First*, Plaintiffs' claims are foreclosed by the New York Superintendent of Insurance's (the "Superintendent") prior approval of the Mitchell Software. Under New York law, determining the validity (or invalidity) of computerized databases like the Mitchell Software is the exclusive province of the Superintendent. *See* N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(c)(1) (2000) ("Regulation 64"). And the Superintendent *expressly approved* the Mitchell Software (which includes the PSA) as a valid valuation methodology in New York long before settlement of Plaintiffs' total loss claims. *See* Ex. G (the "Approval Letter").[2] Plaintiffs' claims, therefore, are improper collateral attacks on the Superintendent's decision. *Shah v. Metro. Life Ins. Co.*, No. 108887/00, 2003 WL 728869, at *11 (N.Y. Sup. Ct. Feb. 21, 2003), *aff'd in part sub nom. Fiala v. Metro. Life Ins. Co.*, 6 A.D.3d 320 (N.Y. App. Div. 1st 2004).

*Second*, even if Plaintiffs' claims were not foreclosed by the Superintendent's actions, the SAC fails to state a claim under GBL § 349. As an initial matter, Plaintiffs' GBL § 349 claim is simply a breach of contract claim under a different label. GBL § 349 provides a right of action for deceptive conduct, but the SAC includes no plausible allegations of deception. Instead, Plaintiffs allege that their purported damages resulted from Defendants' alleged breach of a *contractual*

---

[2] The Court can consider the Approval Letter in the context of Defendants' Rule 12(b)(6) motion because it is a public record. *See Giannone v. Bank of Am., N.A.*, 812 F. Supp. 2d 216, 222 n.2 (E.D.N.Y. 2011) (noting that, in ruling on a Rule 12(b)(6) motion, a court "may consider materials in addition to the complaint if such materials are public records." (quoting *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)); *Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001). ("[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, *letter decisions of government agencies, published reports, records of administrative agencies,* or pleadings in another action.") (emphasis added).

obligation to pay the actual cash value of total loss vehicles. And Plaintiffs themselves allege that the practice they challenge—the Mitchell Software's use of the PSA—is plainly disclosed on the face of the valuation reports they received. Consequently, Plaintiffs have not sufficiently alleged that Defendants engaged in any conduct that is likely to deceive a reasonable consumer, and the absence of any plausible allegation of deception is fatal to Plaintiffs' GBL § 349 claims. In addition, the Third-Party Plaintiffs' GBL § 349 claims fail for the independent reason that the Third-Party Plaintiffs are not policyholders, and they cannot use the pretext of their GBL claims as an end run around the black-letter New York law barring direct actions for third-party insurance claims. If the Third-Party Plaintiffs wished to pursue third-party claims against the at-fault drivers' insurers, rather than submitting claims under their own insurance policies, they were required to obtain judgments against the at-fault drivers first. The Third-Party Plaintiffs did not satisfy this threshold requirement.

*Third*, other than Lukasik—who is the only Plaintiff with a PCIC policy or PCIC-settled claim—Plaintiffs (the "Non-PCIC Plaintiffs") fail to state claims against PCIC because they do not allege that PCIC issued their policies, that they made insurance claims under PCIC-issued policies, or that PCIC paid their claims. Nor could they. Plotts's, Costa's, and Goodier's policies expressly identify Progressive Advanced or Progressive Specialty as the insuring entity, and the policies under which Volino and England made their claims identify Progressive Max and Progressive Advanced as the insuring entities. At bottom, the Non-PCIC Plaintiffs challenge the amounts paid by Progressive Advanced, Progressive Max, or Progressive Specialty to settle their total loss claims under those policies, and they cannot assert those claims against PCIC.

For these reasons, as explained in detail below, the Court should dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6).

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Plaintiffs' Total Loss Claims

Plaintiffs are New York residents who were involved in automobile accidents from 2018 through 2021 that rendered their vehicles total losses. Plaintiff Plotts and Plaintiff Goodier obtained coverage for their vehicles under New York auto policies issued by Progressive Advanced. SAC ¶¶ 9, 25; *see also* Ex. B; Ex. C. [3] Plaintiff Lukasik's vehicle was covered under a New York auto policy issued by PCIC. SAC ¶¶ 10, 26; Ex. D.  And Plaintiff Costa's vehicle was covered under a New York auto policy issued by Progressive Specialty. SAC ¶¶ 11, 27; Ex. E. Plaintiff Volino was involved in an accident in which the other driver was insured by Progressive Max, *id.* ¶ 24; Ex. F, and Plaintiff England was involved in an automobile accident with a Progressive Advanced insured. SAC ¶¶ 13, 29; Ex. A. Plaintiffs allege there are no material differences between the policies, regardless of which Defendant is identified as the underwriter. SAC ¶ 18.

Plaintiffs each submitted property damage claims to the entities that underwrote their insurance policies, and all of Plaintiffs' vehicles were declared total losses. *Id.* ¶¶ 24-31. Accordingly, Defendants offered Plaintiffs the actual cash value of their vehicles as estimated by the Mitchell Software. *Id.* ¶ 31.

The Mitchell Software generated "Vehicle Valuation Reports" for Plaintiffs' total loss vehicles, explaining in detail how the actual cash value of each vehicle was calculated. *Id.* ¶ 32;

---

[3] The Court can properly consider the insurance policies under which each Plaintiff made their claims because the policies are incorporated by reference in the SAC and are central to Plaintiffs' claims. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). The declarations pages of the insurance policies under which Plaintiffs Plotts, Goodier, Lukasik, and Costa filed their total loss claims are attached as Exhibits B, C, D, and E, respectively. The declarations page of the policies for the third-party drivers at fault in Plaintiffs England's and Volino's total loss accidents are attached as Exhibits A and F, respectively. Exhibit B also includes a complete copy of Plaintiff Plotts's insurance policy.

*id.* Ex. 1 at 8; *id.* Ex. 2 at 9; *id.* Ex. 3 at 8; *id.* Ex. 4 at 10; *id.* Ex. 5 at 11; *id.* Ex. 6 at 8. Specifically, the Mitchell Software determined the value of Plaintiffs' loss vehicles by using values for comparable vehicles (*i.e.*, vehicles of the same year, make, and model) that were recently sold or offered for sale in the same geographic area as the loss vehicles. SAC ¶¶ 33-34; *id.* Ex. 1 at 6-7; *id.* Ex. 2 at 6-7; *id.* Ex. 3 at 6-7; *id.* Ex. 4 at 6-8; *id.* Ex. 5 at 6-10; *id.* Ex. 6 at 6-7. Where the comparable vehicles were offered for sale (as opposed to sold), only the vehicles' listed asking prices were available. *See, e.g.*, SAC Ex. 1 at 6-7. Mitchell therefore applied a PSA to the comparable vehicles' asking prices to account for "consumer purchasing behavior (negotiating a different price than the listed price)." *Id.* at 6-8. In addition to the PSAs, Mitchell also adjusted each comparable vehicle, as appropriate, for mileage, vehicle configuration, and equipment to account for differences between the comparable vehicles and the loss vehicle. SAC ¶ 33. The adjusted comparable vehicle values were averaged to reach a "base value," which was then adjusted to account for the condition of each Plaintiff's loss vehicle. *See e.g.,* SAC Ex. 1 at 1, 4, 8; *id.* Ex. 2 at 1, 5, 9.

Plaintiffs contend the PSAs are "deceptive," "do not reflect market realities," and are "contrary to appraisal standards." SAC ¶¶ 36-38. Specifically, Plaintiffs allege that the Mitchell Vehicle Valuation Reports "provide no data specific to the comparable vehicles or any explanation of industry practices . . . to support any [PSA], much less the specific downward adjustments used in [their] valuation reports." *Id.* ¶ 35. Plaintiffs further allege that a Mitchell competitor does not use PSAs when valuing vehicles, and that Defendants do not apply PSAs in California. *Id.* ¶¶ 39-40. Plaintiffs do not, however, challenge the adjustments for mileage, options, and trim, *id.* ¶ 33, which are listed in the Vehicle Valuation Reports in the same level of detail as the PSA, *see, e.g., id.* Ex. 1 at 6-8.

Plaintiffs also contend that Defendants provided no "justification for the Projected Sold Adjustment." SAC ¶ 70. But Plaintiffs ignore that New York law expressly allows an insurer to use a "quotation obtained from a computerized database, approved by the superintendent." N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(c)(1) (2000). Critically, the New York Superintendent of Insurance approved the Mitchell Software that Defendants used to generate the actual cash values of Plaintiffs' vehicles, concluding that it "produces statistically valid fair market values for a substantially similar vehicle, within the local market area." *See* Ex. G.[4] Accordingly, the Superintendent has concluded that the Mitchell Software meets the requirements set forth in Regulation 64, granting insurance companies "approval in New York" to use the Mitchell Software "to provide motor vehicle total loss valuations to insureds." *Id.*

### B.    Allegations as to PCIC

Only Plaintiff Lukasik was insured by PCIC. Nevertheless, the Non-PCIC Plaintiffs allege that the policies relevant to their claims were issued by different underwriters "in coordination with Progressive Casualty," SAC ¶¶ 24-25, 27-29, and/or that they were parties to insurance contracts "requiring Progressive Casualty and [their insurers] to handle, adjust, and pay . . . the actual cash value of their total loss claim[s]." *Id.* ¶¶ 56, 60, 62. But these allegations are belied by the insurance policies themselves.

The declarations page of each policy clearly identifies one entity—either Progressive Advanced, Progressive Specialty, or Progressive Max—as the underwriter. And the policies only create a contractual relationship between the insured and "the underwriting company providing the insurance, as shown on the declarations page." *See* Policy, Ex. B at 3 (defining "we," "us," and

---

[4] The Mitchell Software was originally named "WorkCenter Total Logic," but the name was later changed to "WorkCenter Total Loss." *See* Ex. H (correspondence to Superintendent of Insurance noting name change). The methodology did not change. *Id.*

"our," as "the underwriting company providing the insurance, as shown on the declarations page"); SAC ¶ 18 (alleging no material differences between policies issued by Progressive Group entities); Ex. B at 2 (Plotts's declaration page identifying Progressive Advanced); Ex. C at 2 (Goodier's declarations page identifying Progressive Advanced); Ex. E at 2 (Costa's declarations page identifying Progressive Specialty); Ex. F (declarations page for driver involved in accident with Volino, identifying Progressive Max); Ex. A (declarations page for driver involved in accident with England, identifying Progressive Advanced).

No Plaintiff other than Lukasik alleges that his policy was underwritten by PCIC, nor that he paid any premiums to PCIC, submitted a claim to PCIC, or received any payment from PCIC. *See generally* SAC ¶ 24-29. And every Plaintiff's allegations as to PCIC, except Lukasik, are conclusory assertions made "[u]pon information and belief" regarding PCIC's purported "operations" in New York. *See id.* ¶ 15 (alleging upon information and belief that PCIC "performs all material insurance operations related to auto insurance policies underwritten by Progressive Group entities in the State of New York," or "manages and implements the adjustment of total loss automobile claims made on policies of insurance issued by . . . any Progressive Group" entity in New York); *id.* ¶¶ 14-20 (alleging that PCIC acts "in coordination with other Progressive Group entities"). Plaintiffs do not allege any facts indicating that these operations somehow created privity between themselves and PCIC or otherwise resulted in PCIC assuming an obligation to Plaintiffs (other than Lukasik) with respect to their total loss claims. Indeed, the fact that Lukasik alleges that he had a policy with PCIC and received payment from PCIC makes the other Plaintiffs' omissions more glaring.

### C.    Plaintiffs' Claims

Plaintiffs' claims are based on their contention that Defendants' use of the Mitchell Software to determine the actual cash value of their total-loss vehicles caused Plaintiffs to be

underpaid. SAC ¶¶ 1-2. First-Party Plaintiffs assert breach of contract claims against PCIC, Progressive Advanced, and Progressive Specialty, alleging that they "handled, adjusted, and paid [First-Party Plaintiffs'] claims . . . for less than the actual cash value required by the insurance contract." *Id.* ¶ 54, 64. Based on the same allegations, all of the Plaintiffs also allege that all of the Defendants violated GBL § 349 by using valuation reports that "systematically misrepresent and undervalue the actual cash value of claimants' loss vehicles." *Id.* ¶¶ 67, 72. This purported deception, however, is based on the assertion that "Defendants do not do what their policies says [sic] they will do – pay actual cash value." *Id.* ¶ 70. No Plaintiff alleges that any Defendant engaged in purportedly deceptive conduct outside of their purported failure to pay actual cash value under the terms of their policies.

## III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is required if a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992); *Frazier v. Coughlin*, 850 F.2d 129, 129 (2d Cir. 1988). But plaintiffs are required to allege more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007). Accordingly, to survive a motion to dismiss under Rule 12(b)(6), the allegations set forth in Plaintiffs' Complaint must be enough to render their entitlement to relief *plausible*, rather than speculative, on the assumption that the facts alleged are true, even if doubtful. *Id*. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

At the motion to dismiss stage, the Court can consider plaintiffs' allegations, documents appended to or referred to in the complaint, and matters of which judicial notice may be taken.

*Festa v. Westchester Med. Ctr. Health Network*, 380 F. Supp. 3d 308, 314 (S.D.N.Y. 2019). Specifically, the Court can consider letter decisions of government agencies in ruling on a motion to dismiss without converting it to a motion for summary judgment. *See Moore U.S.A., Inc.*, 139 F. Supp. 2d at 363; *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (stating that courts may consider judicially noticeable documents on a motion to dismiss because "no serious question as to their authenticity can exist" (internal quotation marks and citation omitted)).

## IV.    ARGUMENT

### A.    Plaintiff Cannot Collaterally Challenge the Superintendent's Approval of WCTL.

Plaintiffs' claims are premised on the allegation that the Mitchell Software did not produce statistically valid actual cash values for Plaintiffs' total loss vehicles because it applied PSAs. *E.g.*, SAC ¶ 35 (alleging that "Defendants provide no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support any Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiffs' valuation reports"); *id.* ¶ 41 (alleging Plaintiffs "were not paid the actual cash value they would have received had Defendants applied proper methodologies"). Plaintiffs ignore that the Superintendent long ago concluded that the Mitchell Software "will produce statistically valid total loss valuations which meet the principles set forth in 11 NYCRR 216.7 (c)(1)(iii) of Regulation 64." Ex. G.[5] As a result, the Superintendent "granted approval [for the use of the Mitchell Software] in New York as a computerized database to provide motor vehicle total loss valuations to insurers." *Id.*

The Superintendent issued his findings under the regulatory framework established by New York Regulation 64. That regulation sets forth the standards for prompt, fair, and equitable

---

[5] Plaintiffs do not—and cannot—allege that the PSA is a recent addition to the Mitchell Software, which has always included a PSA.

settlement of motor vehicle physical damage claims. N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(c)(1) (2000). Regulation 64 prescribes the methods an insurer may use to value total-loss vehicles, and it states in relevant part:

> (c)(1) If the insurer elects to make a cash settlement, its minimum offer, subject to the applicable deductions, must be one of the following . . . (iii) A quotation obtained from a computerized database, *approved by the superintendent, that produces statistically valid fair market values for a substantially similar vehicle, within the local market area.*

*Id.* (emphasis added). Because Plaintiffs' claims are "directed at the very issues that were explicitly considered and addressed by the Superintendent[] in his review and approval of the [computerized database]," they are "a[n] [improper] collateral attack on that decision." *Shah*, 2003 WL 728869, at *11.

A legal action that challenges an administrative determination is improper, whether the plaintiff sues the administrative agency or officer that made the determination, *see Fiala,* 6 A.D.3d at 321; *Chatlos v. MONY Life Ins. Co.*, 298 A.D.2d 316, 316 (N.Y. App. Div. 1st 2002), or, as here, sues a regulated private entity affected by the determination, *Fiala*, 6 A.D.3d at 321; *Brawer v. Johnson*, 231 A.D.2d 664, 664 (N.Y. App. Div. 2d 1996); *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 637 F. Supp. 382, 387 (S.D.N.Y. 1986) (dismissing GBL claims in putative class action against insurer because the Superintendent had primary jurisdiction). Nor does it matter that a plaintiff couches his challenge as a common-law claim. *In re E. N.Y. Savs. Bank Depositors Litig.*, 547 N.Y.S.2d 497 (N.Y. Sup. Ct. 1989). In *Fiala*, for example, the trial court dismissed various claims brought by policyholders against MetLife where the policyholders alleged that MetLife's corporate reorganization breached New York law, and therefore the terms of their insurance policies and fiduciary duties purportedly owed by MetLife. *See Shah*, 2003 WL 728869, at *6. The court found that, because the reorganization plan at issue had been approved by the Superintendent,

the claim amounted to an improper collateral attack on that approval. *Id.* at *13. The Appellate Division affirmed this finding. *See Fiala*, 6 A.D.3d at 321 ("For the most part, the Shah plaintiffs' claims that the other defendants violated the statute constitute an impermissible indirect challenge to the Superintendent's determination.") (internal citation omitted).

Plaintiffs' claims are based on their allegation that the Mitchell Software produced statistically invalid valuations of their total loss vehicles because it applied a PSA. That contention is directly at odds with a duly issued opinion of the Superintendent—namely, that the Mitchell Software is a legally permissible and statistically valid means to calculate the value of total loss vehicles. The Superintendent's decision thus forecloses Plaintiffs' claims and the SAC should be dismissed with prejudice. *See Fiala*, 6 A.D.3d at 322-23 (dismissing claims challenging transactions approved by the Department and reinstating only claims challenging transactions not so approved).

## B.    Plaintiffs Fail to State a Claim for Violation of N.Y. Gen. Bus. Law § 349

To state a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058 KAM, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012), aff'd, 519 F. App'x 77 (2d Cir. 2013) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)). Plaintiffs fail to meet this standard here.

### 1.    The Third-Party Plaintiffs Cannot Circumvent New York Law Limiting Third-Party Claims Under the Guise of a GBL § 349 Claim.

New York State Insurance Law § 3420 bars direct claims against insurers by third-party claimants like Volino and England, who did not file claims under their own policies. *See* SAC ¶¶ 24, 29. Consequently, their claims are governed by New York State Insurance Law

§ 3420(a)(2). That law "requires that the injured part[ies]"—Volino and England—must "first obtain a judgment against the defendant causing the injury"—the insureds—before "the injured party can sue the insurer." *M.V.B. Collision Inc. v. Allstate Ins. Co.*, 49 N.Y.S.3d 837, 846 (N.Y. Dist. Co. 2017) (emphasis added). Neither Third-Party Plaintiff alleges that he obtained a judgment against the Progressive Max or Progressive Advanced insured involved in the accident before filing this lawsuit.

Third-Party Plaintiffs' claims against Progressive Max and Progressive Advanced are styled as claims under GBL § 349 for deceptive trade practices, but the substance of their claim—not the label attached to it—should govern. *See In re CIS Corp.*, 172 B.R. 748, 762 (S.D.N.Y. 1994) (courts are not to rely on the "labels attached by the parties" but instead consider "the substance of the claims and the relief sought"); *Capriotti v. Consolidated Rail Corp.*, 878 F. Supp. 429, 433 (N.D.N.Y. 1995) (rejecting position that resolution of claims "should turn upon the labels attached . . . rather than the substance of those claims") (citation omitted). In substance, Third-Party Plaintiffs' claims amount to breach of contract claims, *i.e.*, that Progressive Max and Progressive Advanced allegedly failed to pay them the actual cash value for their total-loss vehicles as promised under the at-fault drivers' insurance policies. SAC ¶ 73 (alleging that "Defendants misrepresented the actual cash value of each Plaintiffs [sic] totaled vehicle, paying . . . less than the actual cash value to which he was entitled"). That claim is barred. Under New York law, an injured party who is "a stranger to the policy of insurance between [the] defendant[] [insurance company] and their insured[]" cannot bring a direct action against the insurance company "where no judgment has been obtained against the alleged tortfeasors." *M.V.B. Collision*, 49 N.Y.S.3d at 846 (dismissing breach of contract claim) (citation omitted).

12

Because Volino and England fail to allege that they have obtained a judgment against the policy owners who caused their total losses, they are not permitted to sue Progressive Max or Progressive Advanced for purportedly paying less than the limits of liability under the policy. Third-Party Plaintiffs' claims must be dismissed.

### 2. Plaintiffs' GBL § 349 Claims Fail Because They Are in Substance Claims for Breach of Contract.

All of Plaintiffs' GBL § 349 claims fail because they are nothing more than breach of contract claims under a different label. Plaintiffs do not allege that they were "deceived" into purchasing insurance policies from Defendants or otherwise misled at any point prior to the settlement of their total loss claims. Instead, Plaintiffs' GBL § 349 claims are based on the allegation that Plaintiffs were somehow deceived because the PSA is "part of a deceptive practice to lower the value of property claims." SAC ¶ 36. The gravamen of Plaintiffs' GBL § 349 claims are thus identical to Plaintiffs' breach of contract claims—*i.e.*, by using the Mitchell Software and applying the PSA, Defendants allegedly paid them less than the actual cash value of their total-loss vehicles. *Compare* SAC ¶ 64 (alleging Progressive Advanced "adjusted, and paid Plaintiff[s'] . . . claim[s] . . . for less than the actual cash value required by the insurance contract" by "the use of improper and unfounded Projected Sold Adjustments") *with id.* ¶ 70 (asserting that the "use of unfounded and arbitrary Projected Sold Adjustments as a means of undervaluing . . . total loss claims" is deceptive). Plaintiffs themselves describe the purported "deception" underlying their GBL claims as a breach of contract, alleging "Defendants do not do *what their policies say[] they will do* – pay actual cash value." *Id.* ¶ 70 (emphasis added).

Plaintiffs' claims fail because "[a] monetary loss under GBL § 349 must be independent of the loss caused by the alleged breach of contract.'" *Milligan v. GEICO Gen. Ins. Co.*, No. 16-CV-240 (DLI)(RML), 2020 WL 5878406, at *10 (E.D.N.Y. Sept. 30, 2020) (dismissing GBL § 349

claim based on allegations that GEICO failed to fully compensate plaintiff for the loss of her vehicle because it was the same injury alleged in plaintiff's breach of contract claim) (citation omitted); *see also Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012) (holding that plaintiff failed to allege injury under Section 349 because the purported damages "stem[med] from the alleged breach of contract").

Defendants recognize that the Second Circuit declined to apply this "independent injury" requirement in *Nick's Garage, Inc. v. Progressive Casualty Insurance Company*, 875 F.3d 107, 125 (2d Cir. 2017), a case in which plaintiffs alleged that their insurer misrepresented the labor rates it was willing to pay body shops for repairs. In a two-sentence discussion at the end of the opinion, the Court found that the "independent injury" requirement did not apply, evidently because the plaintiffs had alleged that the defendant "denied them services for which they contracted." *Id*. (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)). That case is distinguishable from the facts here, where Plaintiffs' GBL claim is entirely co-extensive with their breach of contract claim in challenging Defendants' calculation of actual cash value under the policies at issue. Moreover, the *Nick's Garage* holding did *not* purport to overrule prior New York cases, including *Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) and *Sokoloff v. Town Sports Int'l, Inc.*, 6 A.D.3d 185 (N.Y. App. Div. 1st 2004), which expressly recognize the requirement that "to satisfy the [injury] requirement under § 349," a plaintiff must allege a loss "*independent of the loss caused by the alleged breach of contract.*" *Spagnola,* 574 F.3d at 74 (emphasis added). In addition, the *Nick's Garage* court relied on a prior Second Circuit decision, *Orlander v. Staples, Inc.*, which suggested that a plaintiff must allege a GBL § 349 injury that is in addition to and distinct from the defendant's alleged breach of contract. *See id.* (rejecting defendant's challenge to the GBL § 349 claim where the plaintiff "has alleged *both* a monetary loss stemming from the

14

deceptive practice *and* the Defendant's failure to deliver contracted-for services"). Importantly, since *Nick's Garage*, New York courts have continued to recognize the independent-injury requirement. *See Hobish v. AXA Equit. Life Ins. Co.*, 171 A.D.3d 494 (N.Y. App. Div. 1st 2019) (holding that the GBL "claim is not duplicative of plaintiffs' breach of contract claim" because the plaintiff "has alleged both a monetary loss stemming from defendant's deceptive practices and an independent loss derived from defendant's failure to deliver contracted for services"); *see also Milligan*, 2020 WL 5878406, at *10 (dismissing GBL claim where plaintiff failed to plead an injury independent from breach of contract claim).

This Court should follow the more recent precedent established by New York appellate courts as indicative of the outcome the New York Court of Appeals would reach on this question. *See In re Eastern & Southern Districts Asbestos Litig.*, 772 F. Supp. 1380, 1391 (E.D.N.Y. & S.D.N.Y. 1991) ("Where a conflict exists between holdings of the Second Circuit and more recent determinations of state appellate courts, this court will follow the outcome it believes the New York Court of Appeals would reach, without giving binding authority to the Second Circuit's construction of the state statute."), *aff'd in part rev'd in part sub nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992). Accordingly, Plaintiffs' GBL § 349 claims fail because Plaintiffs have not alleged an independent injury separate and apart from Defendants' alleged failure to fulfill their contractual obligations to pay actual cash value.

### 3.    Plaintiffs Fail to Plausibly Allege Materially Misleading Conduct

Plaintiffs' GBL § 349 claims also fail because they do not sufficiently allege any conduct by Defendants that is likely to mislead a reasonable consumer. Plaintiffs contend that the PSA does not "reflect market realities" and is "contrary to proper appraisal methodologies for determining actual cash value." SAC ¶¶ 37-38. Further, Plaintiffs allege the PSA is "arbitrary" because a competing valuation software provider purportedly does not apply a PSA, and that Defendants'

affiliates underwriting policies in California do not apply a PSA when valuing total loss claims *in California*. *Id.* ¶¶ 38-39. By using the Mitchell Software as the basis for its offers to Plaintiffs, therefore, Plaintiffs contend that Defendants "misrepresented the actual cash value" of their total loss vehicles, paying them less than the actual cash value to which they were entitled. *Id.* ¶ 73.

Plaintiffs' allegations, even accepted as true, do not establish any deceptive or misleading conduct as required to state a claim under GBL § 349. To be "materially misleading" the allegedly deceptive act "must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300 (citation omitted). At most, Plaintiffs' allegations reflect a disagreement with one adjustment applied by the Mitchell Software in calculating the actual cash value of their vehicles, not that the adjustment in question was deceptive or hidden. To the contrary, according to Plaintiffs' own allegations, they were fully informed about that adjustment, along with the other calculations that led to the determination of their vehicles' actual cash values. SAC ¶¶ 33, 73; *see, e.g, id.* Ex. 1 at 6-7, 8; *id.* Ex. 2 at 6-7, 9. This does not amount to a violation of the GBL.

Under New York law, a plaintiff cannot state a claim under GBL § 349 when the material facts were fully disclosed. "Where a defendant 'fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff,' an action under GBL § 349 will not lie." *Dimond v. Darden Restaurants, Inc.*, No. 13 CIV. 5244 (KPF), 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014) (finding restaurant's imposition of 18% gratuity not deceptive or misleading where the policy was clearly disclosed in restaurant's menu) (quoting *Derbaremdiker*, 2012 WL 4482057, at *4 (restaurant receipt regarding sweepstakes entry was not materially misleading where complete details were provided at the website referenced on the receipt)). For example, when plaintiffs have challenged fees charged that were fully disclosed in advance of

payment, New York courts have repeatedly found no deceptive or misleading conduct. *See, e.g.*, *Oskar v. IDS Prop. Cas. Ins. Co.*, No. 09-CV-04516 RRM JO, 2011 WL 1103905, at *5 (E.D.N.Y. Mar. 23, 2011) (finding, in a case against an insurer, that there can be no claim for deceptive acts or practices when the alleged deceptive practice was fully disclosed); *Shovak v. Long Island Com. Bank,* 858 N.Y.S.2d 660, 662–63 (N.Y. App. Div. 2d 2008) (granting motion to dismiss because borrower failed to allege a materially misleading statement by mortgage broker where the challenged yield spread premium was disclosed in the written agreement and the amount was reflected in the HUD-1 statement); *Zuckerman v. BMG Direct Mktg., Inc.*, 737 N.Y.S.2d 14 (N.Y. App. Div. 1st 2002) (holding that shipping and handling fees were not deceptive where amounts were disclosed, dismissing GBL claim); *Sands v. Ticketmaster–New York, Inc.*, 616 N.Y.S.2d 362 (N.Y. App. Div. 1st 1994) (same holding for disclosed ticket service fees); *Lewis v. Hertz Corp.*, 581 N.Y.S.2d 305 (N.Y. App. Div. 1st 1992) (same holding for disclosed rental car refueling fees).

The valuation reports attached to the Second Amended Complaint as Exhibits 1 through 6 demonstrate that the PSA was disclosed in the same place and in the same font size as other adjustments, which Plaintiffs do not challenge. *See* SAC Ex. 1 at 6-7; *id.* Ex. 2 at 6-7; *id*. Ex. 3 at 6-7; *id*. Ex. 4 at 6-8; *id*. Ex. 5 at 6-10; *id*. Ex. 6 at 6-7. And all adjustments, including the PSA, were explained in the same level of detail on the page titled "Vehicle Valuation Methodology Explanation." SAC Ex. 1 at 8; *id.* Ex. 2 at 9; *id*. Ex. 3 at 8; *id*. Ex. 4 at 10; *id*. Ex. 5 at 11; *id*. Ex. 6 at 8. Plaintiffs do not explain how the simple, clear explanation of the PSA—"an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)"—misled them. SAC Ex. 1 at 8; *id.* Ex. 2 at 9; *id*. Ex. 3 at 8; *id*. Ex. 4 at 10; *id*. Ex. 5 at 11; *id*. Ex. 6 at 8. Indeed, the Second Amended Complaint makes abundantly clear that Plaintiffs know exactly what the PSA is and what it is designed to accomplish. And importantly, there are no allegations

demonstrating that a reasonable consumer would understand the PSA to be anything other than what it is and is clearly explained to be: a projection of the amount that vehicle will actually sell for on the open market. Plaintiffs acknowledge that before accepting Defendants' settlement offers they were provided with valuation reports that fully disclosed the PSA, its purpose, and the exact amounts by which the PSA impacted the valuation of their vehicles. SAC ¶ 32. Thus, Defendants' use of the PSA cannot be deceptive or misleading.

Plaintiffs' allegations that the PSA does not reflect "market realities," is different from other appraisal methods, or is not used in California are irrelevant to the analysis. *Id.* ¶¶ 37-39. Even if the PSA were improper or inaccurate, that would not constitute a deceptive act because Plaintiffs do not allege that Defendants' use of the PSA—which was fully disclosed and described to Plaintiffs—would be likely to deceive a reasonable consumer. *Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171, 200 n.20 (E.D.N.Y. 2019), amended, No. 18-CV-2352 (RRM) (ARL), 2020 WL 9174972 (E.D.N.Y. Sept. 29, 2020) (dismissing GBL § 349 claim because "although the Bank may have erroneously withheld fees, there can be no contention that it attempted to deceive Plaintiffs along the way"); *Varela v. Invs. Ins. Holding Corp.*, 615 N.E.2d 218, 219 (N.Y. 1993) ("Whether or not defendant's actions were proper, manifestly they did not mislead plaintiffs in any material way and did not constitute 'deceptive acts' within the meaning of the statute.").

Plaintiffs cannot elevate a dispute over the valuation of their total loss vehicles, which was fully disclosed and described to them, into a purported violation of GBL § 349. Plaintiffs have failed to allege any materially misleading conduct, therefore their GBL § 349 claims should be dismissed.

C.  **Plaintiffs Volino, Plotts, Goodier, Costa, and England's Claims Against PCIC Fail**

The Non-PCIC Plaintiffs' claims against PCIC fail for an additional reason: they have no relationship with PCIC sufficient to give rise to a claim. The Non-PCIC Plaintiffs do not have insurance policies with PCIC, they did not file claims under PCIC-issued insurance policies, and PCIC did not pay their total loss claims. *See* Exs. A-F. It is axiomatic that "[o]ne cannot be held liable under a contract to which he or she is not a party." *Arroyo v. Central Islip UFSD*, 103 N.Y.S.3d 512, 514 (N.Y. App. Div. 2d 2019) (citation omitted); *McNulty v. Polar Corp.*, No. 19 Civ. 8903 (LGS), 2020 WL 5658667, *6 (S.D.N.Y. Sept. 23, 2020) ("Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties.") (citation omitted); *see also Fosmire v. Progressive Max Ins. Co.*, No. C10-5291JLR, 2010 WL 3489595, at *2-3 (W.D. Wash. Aug. 31, 2010) (holding that allegation that Progressive Casualty "processes, adjusts, and sets the claims adjusting policies for payment of" claims "for all the Progressive family of companies . . . is insufficient to confer standing on Ms. Fosmire based on her claims for breach of the insurance policy she entered into with Progressive Max"). At bottom, the relief the Non-PCIC Plaintiffs seek—*i.e.*, compensation for the purported underpayment of their claims—stems entirely from the insurance policies issued by Progressive Advanced, Progressive Max, and Progressive Specialty. The Non-PCIC Plaintiffs' claims against PCIC should accordingly be dismissed.

The same reasoning holds true for the Non-PCIC Plaintiffs' GBL § 349 claims, which are nothing more than breach of contract claims under a different name. *See supra* Section IV(B)(2). In addition, the Non-PCIC Plaintiffs cannot—and do not—allege that PCIC made any misrepresentation to them or engaged in any allegedly deceptive conduct. At most, the Non-PCIC Plaintiffs allege that they were "deceived" by the statement in the relevant insurance policy that

Defendants would pay Plaintiffs the actual cash value of their total loss vehicles and by Defendants' use of the PSA to estimate the actual cash value of their vehicles. SAC ¶ 27. Because the Non-PCIC Plaintiffs cannot demonstrate that PCIC is a party to the relevant insurance policies or that PCIC paid their total loss claims, they cannot assert their GBL § 349 claims against PCIC. *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014) ("[T]he causation element is essential: The plaintiff must show that the defendant's material deceptive act caused the injury.") (quotations and citation omitted).

## V.    CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).

Dated: November 10, 2021

*/s/ Jeffrey S. Cashdan*
Jeffrey S. Cashdan (*pro hac vice* granted)
Zachary A. McEntyre (*pro hac vice* granted)
J. Matthew Brigman (*pro hac vice* granted)
Allison H. White (*pro hac vice* granted)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100
jcashdan@kslaw.com
zmcentyre@kslaw.com
mbrigman@kslaw.com
awhite@kslaw.com

Julia C. Barrett (*pro hac vice* granted)
**KING & SPALDING LLP**
500 W. 2nd Street
Austin, Texas 78701
Telephone: (512) 457-2000
Fax: (512) 457-2100
jbarrett@kslaw.com

Laura E. Harris
**KING & SPALDING LLP**

1185 Avenue of the Americas
34th Floor
New York, NY 10036-4003
Telephone:  (212) 556-2100
Fax:  (212) 556-2222
lharris@kslaw.com

*Counsel for Defendants*