UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                :
DOMINICK VOLINO, et al.,                 :
                      Plaintiffs,    :
                                :             21 Civ. 6243 (LGS)
                                :
            -against-               :
                                :
PROGRESSIVE CASUALTY INSURANCE    :
COMPANY, et al.,                      
                      Defendants.  :
------------------------------------------------------------ X
                                :
MICHAEL VERARDO, et al.,           :
                      Plaintiffs,    :
                                :             22 Civ. 1714 (LGS)
           -against-               :
                                :      **OPINION AND ORDER**
PROGRESSIVE CASUALTY INSURANCE    :
COMPANY, et al.,                      :
                      Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiffs John Plotts, Kevin Lukasik, Lorenzo Costa, Zachary Goodier, James England, Michael Verardo and Lori Lippa ("Plaintiffs") bring this action on behalf of themselves and a putative class of others against Defendants Progressive Casualty Insurance Company ("PCIC"), Progressive Advanced Insurance Company, Progressive Specialty Insurance Company and Progressive Max Insurance Company (collectively, "Defendants"). All Plaintiffs assert claims of deceptive practices in violation of New York General Business Law ("GBL") § 349 and seek declaratory judgment, and Plaintiffs other than England (the "First-Party Plaintiffs") assert claims for breach of contract. Defendants move to dismiss the Consolidated Amended Complaint (the "Complaint"). For the reasons stated below, Defendants' motion is denied.

I.      BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion, *see R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020), except as otherwise explained.

Plaintiffs bring this action on behalf of themselves and others similarly situated in New York who received payment for the loss of a totaled vehicle from the insurer Defendants, where Defendants used valuation reports that applied an improper and deceptive adjustment -- the so-called "Projected Sold Adjustments" ("PSA") -- to reduce the resulting actual cash value payable to Plaintiffs under Defendants' automobile insurance policies.

All Plaintiffs were involved in a car wreck resulting in the total loss of their vehicle.  The First-Party Plaintiffs each had auto insurance through a policy issued by one of the Defendants. In the case of Plaintiff England, the driver of the other vehicle had a policy issued by one of the Defendants.  All of the policies were issued by PCIC or in coordination with PCIC.

Defendants declared each of Plaintiffs' vehicles to be a total loss.  The policies at issue include promises that, in the event of total loss, Defendants would pay Plaintiffs the actual cash value of their vehicles.  Defendants used "Vehicle Valuation Reports" ("Reports") created by non-party Mitchell International, Inc. ("Mitchell") in their "total loss settlement process" to calculate the amount due to Plaintiffs.  Each Report purports to list values for comparable vehicles either sold or listed for sale in the relevant geographic area, which are then adjusted to account for any differences between the comparable vehicles and Plaintiffs' vehicles in terms of equipment, mileage and vehicle configuration.

Each Report applied a PSA to the prices of comparable vehicles listed for sale, i.e., most of the comparable vehicles.  For Plaintiffs, PSAs reduced the value attributed to comparable

vehicles by 4.6% to 11.7%.  The Reports provided to Plaintiffs state that the PSA is "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)."

Some time before July 28, 2015 (the beginning of the alleged Class Period), used car dealers would price vehicles above their market value, and savvy customers were expected to negotiate those prices down before purchasing.  Today, customers increasingly are able to shop and compare prices for used cars on the internet.  Because of this transparency, it is less common for car dealers to inflate the initial ask price for used cars above market and for car buyers to negotiate a discount off the listed price.  Defendants, via Mitchell, calculated a PSA that reduced Defendants' total loss payments in part by excluding transactions in which the sale price exceeded the list price and, with some recent exceptions, transactions in which the sale price equaled the list price.  Cars may sell for more than the apparent list price, for example, if the listing includes discounts that are not available to all customers, such as dealer financing discounts, loyalty discounts, trade-ins, etc.  Cars also may sell for less than the list price for reasons other than negotiation by the customer, such as where a dealer transfers part of the sale profit into an ancillary product or a trade-in, or where a customer has access to a non-public discount like an employee discount.

New York's "Regulation 64," 11 N.Y.C.R.R. § 216.7, permits insurers like Defendants to use a "computerized database" like Mitchell's, if it "produces statistically valid fair market values for a substantially similar vehicle, within the local market area," meaning "vehicles sold within the 90 days prior to the loss and vehicles which are available" within "a 100 mile radius" of the insured.  In addition to the statistical issues with the calculation of the PSA described above, Defendants do not comply with the geographic limitation of Regulation 64.

3

## II.      STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for the Complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

## III.      DISCUSSION

### A.      Breach of Contract

Defendants' motion to dismiss the First-Party Plaintiffs' claims for breach of contract is denied because the Complaint sufficiently alleges underpayment by Defendants and does not impermissibly collaterally attack any administrative decision.

1.   **Allegations of Breach**

Defendants are incorrect that the Complaint fails to allege breach because it does not

allege "what the true actual cash value of [Plaintiffs'] vehicles should have been" or "the amount

by which Defendants purportedly underpaid them."  The Complaint alleges that Defendants'

methodology, using the Mitchell Reports, accurately calculates actual cash value, except for the

application of the allegedly invalid PSA.  "[A]side from the PSA at issue, Plaintiffs do not

challenge the Mitchell methodology for calculating the actual cash value of total-loss vehicles."

Put differently, the Complaint alleges that the amount of the PSA is the measure of

underpayment, and the value Defendants calculate once the PSA is removed is the actual cash

value.  Contrary to Defendants' argument, the Complaint does not allege merely that the PSA

fails to capture idiosyncratic behaviors or technically violates Regulation 64's geographic

requirements, either of which might result in the PSA over- or under-estimating actual cash

value.  Rather, the Complaint alleges that the application of the PSA systematically breaches the

contracts because the PSA "do[es] not reflect market realities . . . and run[s] contrary to

customary automobile dealer practices."  The Complaint also alleges that the PSA is applied

"solely for the purpose of reducing the valuation of Defendants' claimants' vehicles."  The

Complaint contains detailed, non-conclusory allegations to support the inference that the PSA is

unsupported by current market data and does not reflect current market conditions.  Those

allegations are sufficient to state a claim for breach of contract.

2.   **Collateral Attack**

Defendants also are incorrect that this lawsuit is an impermissible collateral attack

because the Mitchell methodology was "approved by the Superintendent."  Regulation 64

permits insurers to use "[a] quotation obtained from a computerized database, approved by the

superintendent, that produces statistically valid fair market values for a substantially similar vehicle, within the local market area" in order to value total losses.  11 N.Y.C.R.R. § 216.7(c)(1)(iii).  Even assuming the Court may take judicial notice of the approval letter from the New York Superintendent of Insurance, there is no legal basis for Defendants' claim that a one-time approval immunizes a database forever against allegations that it does not "produce[] statistically valid fair market values."  *Id.*

Defendants cite several New York trial court and intermediate appellate court cases dismissing lawsuits that challenged the conversion of an insurance company or savings bank from mutual to stock ownership in light of prior approval by the New York Superintendent of Insurance or the Superintendent of Banks.  *See, e.g.*, *Shah v. Metropolitan Life Ins. Co.*, Nos. 108887/00, 601181/00, 2003 WL 728869, at *11 (Sup. Ct. N.Y. Cnty. Feb. 21, 2003), *aff'd in part sub nom.*, *Fiala v. Metropolitan Life Ins. Co.*, 776 N.Y.S.2d 29 (1st Dep't 2004); *Chatlos v. MONY Life Ins. Co.*, 749 N.Y.S.2d 230, 231 (1st Dep't 2002).  Those cases are distinguishable. Each of those demutualizations was a one-time event that extinguished certain ownership interests, where the affected parties had notice of the Superintendent's decision, an opportunity to be heard and a statutorily defined remedy in Article 78 proceedings.  In contrast, the original approval of the database here took place more than a decade ago, when no potential total-loss claimants could have known that they would be affected by it, and when the Superintendent could not have known whether and how either the database, or the real-world conditions relevant to the database's assumptions, would evolve.

The New York Court of Appeals specifically distinguished *Shah* from a case like this one, where "even assuming the issues considered by the Superintendent in approving the [prior act] are identical to the issues raised by plaintiffs in their plenary action (which they are not),

plaintiffs had no opportunity to contest the Superintendent's determination or, more importantly, challenge the validity of the . . . information provided to him by defendants which formed the basis of the Superintendent's approval." *ABN AMRO Bank, N.V. v. MBIA Inc.*, 952 N.E.2d 463, 473 (N.Y. 2011). The Court of Appeals in *ABN AMRO Bank* found it "[c]rucial[]" that, as in this case, "the Superintendent accepted the truth of defendants' submissions," and found that "there was nothing 'quasi-judicial' about the Superintendent's approval process that ought to be binding on the plaintiffs in this case." *Id.*; *cf. Taylor v. N.Y.C. Transit Auth.*, 433 F.2d 665, 670 (2d Cir. 1970) (addressing a quasi-judicial administrative hearing procedure).

Defendants mention the doctrine of primary jurisdiction in passing but decline to press the argument in their reply. *See Azby Brokerage, Inc. v. Allstate Ins. Co.*, 637 F. Supp. 382, 384-85 (S.D.N.Y. 1986) ("[P]rimary jurisdiction doctrine was developed 'to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented.'"). Even if Defendants relied on that doctrine, it would not bar Plaintiffs' suit. Whatever expertise the Superintendent may have in technical compliance with Regulation 64, the question of whether Defendants upheld their promise to pay Plaintiffs actual cash value "is legal in nature and lies within the traditional realm of judicial competence." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988); *accord Alvarado Balderramo v. Go New York Tours Inc.*, No. 15 Civ. 2326, 2021 WL 1856720, at *6 (S.D.N.Y. May 10, 2021).

**B.    GBL § 349**

To state a claim under GBL § 349, "[a] plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception."

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171

N.E.3d 1192, 1197 (N.Y. 2021).  Defendants' motion to dismiss the GBL § 349 claims is denied

because the Complaint sufficiently alleges consumer-oriented deceptive acts that caused injury.

### 1.  Allegations of Deceptive Acts

The Complaint sufficiently alleges that Defendants engaged in materially deceptive or

misleading acts by representing that the PSA is "an adjustment to reflect consumer purchasing

behavior (negotiating a different price than the listed price)."  As discussed above, the Complaint

alleges that the PSA is a "deceptive and improper" device to save Defendants money, with a *post

hoc* justification constructed using deliberately skewed data.  A reasonable consumer could read

Defendants' representation and come away with the allegedly mistaken belief that the PSA

reflects a good faith effort "to reflect consumer purchasing behavior" of "negotiating a different

price."  *See Himmelstein, McConnell*, 171 N.E.3d at 1198 (discussing "reasonable consumer"

test).

Contrary to Defendants' argument, the PSA was not "fully disclosed" and thus

nondeceptive.  Defendants argue that they disclosed both the amount of the PSA and the

purported rationale for that adjustment -- "to reflect consumer purchasing behavior."  That

simply begs the question, because the Complaint alleges that the stated rationale is a sham and

Defendants' "disclosure" is misleading.  While Defendants disclosed the amount of the PSA, the

Complaint sufficiently alleges that Defendants "*did not do* what its policy said it would do," and

that this shortcoming would not be apparent from the face of any disclosure to Plaintiffs.  *Nick's

Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017) (finding deceptive

act where "the rates listed on Insurer's estimates did not represent the prevailing competitive

8

labor rates, as they purported to do"); *accord Kronenberg v. Allstate Ins. Co.*, No. 18 Civ. 6899, 2020 WL 1234603, at *4 (E.D.N.Y. Mar. 13, 2020).

Defendants cite several cases holding that full disclosure is a defense to GBL § 349, even where an amount charged is not necessarily justified by the given rationale.  Those cases are all distinguishable because they involve "terms and conditions [that] were completely and conspicuously" disclosed "so that each patron was expressly informed as to the cost . . . prior to voluntarily" entering into the transaction.  *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244, 2014 WL 3377105, at *7-8 (S.D.N.Y. July 9, 2014) (18% gratuity disclosed on a restaurant menu); *see, e.g.*, *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 363 (1st Dep't 1994) (Ticketmaster fees); *Zuckerman v. BMG Direct Mktg., Inc.*, 737 N.Y.S.2d 14, 15-16 (1st Dep't 2002) (shipping and handling fees).  In those cases, customers "had the option of leaving the restaurant" or otherwise taking their business elsewhere "upon seeing this disclosure."  *Dimond*, 2014 WL 3377105, at *8.  Plaintiffs could seek insurance coverage only from their own insurers. Plaintiffs could not see the data showing that the PSA was unjustified.  Defendants' allegedly false claim that the PSA was a justifiable reflection of actual cash value would mislead reasonable consumers and make it less likely they would seek any remedy.

### 2.  Allegations of Injury

The Complaint sufficiently alleges an injury cognizable under GBL § 349.  Contrary to Defendants' argument, the Complaint need not allege that Defendants' deceptive conduct caused Plaintiffs' damages independent of the breach of contract.  The deceptive practices alleged in the Complaint are sufficiently distinct from a mere breach of contract to state a GBL § 349 claim.

Defendants argue that New York law imposes an "independent injury" requirement, but the Second Circuit has held that "[t]he cases on which Insurer relies . . . do not establish such a

requirement" that Plaintiffs "allege an injury independent of their contract damages." *Nick's Garage*, 875 F.3d at 125; *accord Milligan v. GEICO Gen. Ins. Co.*, No. 20-3726-cv, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022) (summary order). Rather, "those cases found no GBL injury 'where the plaintiffs alleged damages in the amount of the purchase price of their contracts, but failed to allege that defendants had denied them the services for which they contracted.'" *Nick's Garage*, 875 F.3d at 125 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015), in turn distinguishing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) and *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9 (1st Dep't 2004)); *accord Milligan*, 2022 WL 433289, at *6. "Here, to the contrary, Plaintiff[s] ha[ve] alleged both a monetary loss stemming from the deceptive practice and the Defendant[s'] failure to deliver contracted-for services," by alleging that Defendants failed to provide actual cash value for Plaintiffs' total loss settlements. *Orlander*, 802 F.3d at 302.

The New York cases purportedly establishing the rule on which Defendants rely hold only that a plaintiff must allege "actual injury," and not merely "deception as both act and injury." *Sokoloff*, 778 N.Y.S.2d at 10-11 (quoting *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999)). The plaintiffs in those cases alleged only denial of rights to "mak[e] free and informed choices as consumers," *Small*, 720 N.E.2d at 898, without "monetary loss other than" the cost of the services chosen, *Sokoloff*, 778 N.Y.S.2d at 10. *See Lucker v. Bayside Cemetery*, 979 N.Y.S.2d 8, 17-18 (1st Dep't 2013) (citing *N.Y. Univ. v. Continental Ins. Co.*, 662 N.E.2d 763 (1995)) (holding only that "mere allegations," meaning conclusory allegations, of a lack of intent to perform, did not state a claim for deception). The Complaint alleges that Plaintiffs suffered actual monetary loss because Defendants misrepresented the basis on which it calculated the PSA "to systematically undervalue and, in turn, underpay Plaintiffs' total loss

claims" and paid each Plaintiff less than "the actual cash value of claimant's loss vehicles."  That is all that New York law requires.

To the extent the Second Circuit in *Spagnola* or trial courts in this Circuit arguably expanded the doctrine, those cases were overruled or narrowed by the Second Circuit's interpretation of New York law in *Nick's Garage*.  *See Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012).[1]  The facts of *Nick's Garage* are substantively indistinguishable from those alleged in the Complaint.  Plaintiffs in *Nick's Garage* also alleged that Progressive calculated a reimbursement using unjustified assumptions that contradicted actual market conditions and systematically favored the insurer.  *Nick's Garage*, 875 F.3d at 124.

*Hobish v. AXA Equitable Life Ins. Co.*, 98 N.Y.S.3d 38 (1st Dep't 2019), does not require a different result.  If "the Second Circuit has interpreted New York law as pronounced by New York's intermediate appellate courts . . . this Court is bound by Second Circuit precedent unless and until the New York Court of Appeals reaches a contrary conclusion."  *John Gore Org., Inc. v. Fed. Ins. Co.*, No. 21 Civ. 2200, 2022 WL 873422, at *11 (S.D.N.Y. Mar. 23, 2022).  Even assuming that "a conflict exists between holdings of the Second Circuit and more recent determinations of state appellate courts," and that this Court could "follow the outcome it believes the New York Court of Appeals would reach, without giving binding authority to the Second Circuit's construction," this Court would not deviate from *Nick's Garage*.  *See In re E. & S. Districts Asbestos Litig.*, 772 F. Supp. 1380, 1391 (E.D.N.Y. 1991), *aff'd in part, rev'd in part on other grounds sub nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.

---

[1] To the extent district courts have not followed *Nick's Garage* since it was decided, those decisions are unpersuasive.  *See Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21 Civ. 224, 2021 WL 5745717, at *7 (S.D.N.Y. Dec. 2, 2021); *Polk v. Del Gatto, Inc.*, No. 21 Civ. 129, 2021 WL 3146291, at *11 (S.D.N.Y. July 23, 2021); *Chambers v. HSBC Bank USA, N.A.*, No. 19 Civ. 10436, 2020 WL 7261155, at *5 (S.D.N.Y. Dec. 10, 2020).

1992); *see also Global Reins. Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021) (taking the same approach to the Second Circuit's own precedent). *Hobish* is less likely than *Nick's Garage* to predict the direction the New York Court of Appeals would take. *See id.* ("The federal Court of Appeals is in the same position as a lower state court vis-à-vis the New York Court of Appeals in construing state substantive law under *Erie*."). As discussed above, New York cases prior to *Hobish* do not even suggest an independent injury requirement. The trial court in *Hobish* relied solely on the Second Circuit cases that *Nick's Garage* construed not to require independent injury. *Hobish v. AXA Equitable Life Ins. Co.*, No. 650315/2017, 2018 WL 780603, at *14 (Sup. Ct. N.Y. Cty. 2018) (citing *Spagnola*, 574 F.3d at 66-73 and *Orlander*, 802 F.3d at 292-302). The First Department's affirmance devoted one sentence to the issue, and while it found that an independent injury was present in *Hobish*, it did not say such an injury was required. *Hobish*, 98 N.Y.S.3d at 39-40. *Hobish* is not persuasive that the Second Circuit's construction or prediction of New York law in *Nick's Garage* was wrong.

For the same reasons, Plaintiff England's GBL § 349 claim can proceed because it is not simply a disguised breach of contract claim. England allegedly received a total loss settlement that misrepresented the PSA, and therefore suffered injury caused by Defendants' deceptive acts. Of course, Plaintiff England cannot recover twice for the same damages but may seek to recover based on different legal theories of liability.

### C. Common Enterprise and Agency Liability

Plaintiffs' claims may proceed against PCIC, regardless of which Defendant is named on Plaintiffs' policies. Defendants argue, correctly, that liability for breach of contract requires privity of contract. *See Arroyo v. Central Islip UFSD*, 103 N.Y.S.3d 512, 514 (2d Dep't 2019). However, under New York law, an agent may bind its principal to a contract if the agent has

actual or apparent authority. *See Standard Funding Corp. v. Lewitt*, 678 N.E.2d 874 (N.Y. 1997); *Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) (applying New York law); *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 490 n.28 (S.D.N.Y. 2022) (same).

Because "an outsider will not be privy to the details of what conversation or conduct took place between a principal and the agent," "a plaintiff need only raise a sufficient inference that some sort of agency relationship existed" at the motion to dismiss stage. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (cleaned up); *accord Ajinomoto Co. v. CJ CheilJedang Corp.*, No. 16 Civ. 3498, 2021 WL 4430200, at *5 (S.D.N.Y. Sept. 27, 2021). "Indeed, New York courts have stated broadly that where the circumstances alleged in the pleading raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency are issues for the jury." *Amusement Indus.*, 693 F. Supp. 2d at 344 (cleaned up).

The Complaint alleges sufficient facts to raise a reasonable inference of an agency relationship. "Under New York law, an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Highland Cap.*, 607 F.3d at 327 (citing *Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y. 1973)). The Complaint alleges that Defendants have the same website, address and phone number, report their financial results at the level of the "Progressive Group of Companies," all register with the New York Department of Financial Services under the same Group Name and Number, and define "Progressive" as the "Progressive Group of Insurance Companies" for purposes of their common website's terms of service. *See Ajinomoto Co.*, 2021 WL 4430200, at *6 (finding agency relationship based on

13

similar allegations).  The Complaint alleges that the valuation reports provided to Plaintiffs identified only the "Progressive Group of Insurance Companies," not an individual Defendant. The Complaint alleges that PCIC owns "Group" assets, including the website, claims database, intellectual property and the Group's marketing.  The Complaint also alleges that PCIC controls the claims adjustment of total-loss automobile claims for all of the Defendants, including employing adjusters, investigating claims and contracting with Mitchell to provide the reports, complete with the PSA, used in valuing claims.

The foregoing raises a reasonable inference that PCIC controls the issuance of and payment of claims on the other Defendants' policies.  The Complaint alleges that PCIC directs the use of a single method by all Defendants to depress total loss settlements, which would be relevant to the underwriting process.  The return on PCIC's numerous alleged investments in the Group's assets also depends on the other Defendants' policies.  *See Autronic Plastics, Inc. v. Apogee Lighting, Inc.*, No. 19 Civ. 6268, 2021 WL 5965715, at *6 (E.D.N.Y. Dec. 16, 2021) (finding agency relationship based on parent's "direct financial interest" in and "right and ability to supervise" the subsidiary in the conduct at issue).

Plaintiffs' common enterprise argument is unpersuasive, as it rests on a doctrine that is peculiar to the Federal Trade Commission Act.  *See F.T.C. v. Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *5 (E.D.N.Y. May 23, 2012) ("[I]f the structure, organization, and operation of a business venture among separate corporate entities reveal a common enterprise or a 'maze of interrelated companies,' the FTC Act disregards the corporate form.").

14

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket Number 124.

Dated: October 6, 2022
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE