

October 19, 2022

**Via ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York 500
Pearl Street, Room 1950
New York, NY 10007

  Re: *Volino, et. al. v. Progressive Casualty Ins. Co.*, et al., No. 1:21-cv-06243-LGS

Dear Judge Schofield:

  **A. Introduction**

  Pursuant to Fed. R. Civ. P. 37, Plaintiffs move to compel the deposition of Wen Tan (limited to three hours) and the re-opening of the deposition of Defendants' expert Marc Spizzirri. Defendants hired Mr. Spizzirri to design and implement a survey to support their position that the application of a Projected Sold Adjustment ("PSA") is appropriate in the modern used-car market. But the results of that survey presented a dilemma: They supported Plaintiffs' position and undermined Mr. Spizzirri's planned opinions. The proper course would have been for Mr. Spizzirri to acknowledge that his hypothesis turned out to be incorrect or not to rely on the survey as a basis for his opinions. Instead, Defendants withheld the underlying survey data, Mr. Spizzirri—or someone working for him—interpreted the results in a skewed "summary," and Progressive attempted to prevent Plaintiffs from discovering the underlying survey information until being ordered to do so.

  As set forth below, Mr. Spizzirri testified he had never seen the critical underlying survey information and only saw the skewed "summary" that was produced with his Report. Considering that Mr. Spizzirri designed and oversaw the survey, this testimony might well be false. To confirm, Plaintiffs request to depose Wen Tan, a colleague who worked at Mr. Spizzirri's direction and helped compile the survey data produced in this case. Mr. Tan will have facts regarding what information was provided to Mr. Spizzirri. Even if for some reason Mr. Spizzirri was never provided the full results of his own survey, Mr. Tan will know how the underlying survey data was summarized, why only he but not Mr. Spizzirri was provided the actual survey results, and why significant results were deleted from the spreadsheet produced to Plaintiffs. Further, Mr. Spizzirri explicitly testified that certain survey information would be relevant to his opinions, but that he did not have the information. It turns out he, or those acting under his supervision, had the

information all along. Questions regarding the full survey results would have been the core of Mr. Spizzirri's deposition. Now that Plaintiffs have the full results in hand and know that, at least, Mr. Spizzirri's subordinates had them at the time of his deposition, Plaintiffs should have the opportunity to question Mr. Spizzirri about this information.

### B. Plaintiffs should have the opportunity to depose Mr. Tan and to re-open Mr. Spizzirri's deposition.

In valuing total-loss vehicles, Progressive applies a PSA deduction to the listed price of comparable vehicles, based on the incorrect hypothesis that used car dealerships price vehicles above their market value and then negotiate down from that price. Plaintiffs provided expert testimony that this assumption is false and conflicts with how the used car market operates. During the class period, dealerships price vehicles to market and generally sell vehicles—particularly in cash transactions—for their advertised price. Plaintiffs' experts explained that if a vehicle is sold for less than listed price, two primary reasons would be: (1) the consumer financed through the dealership; or (2) the consumer had a trade-in. Neither is relevant to a vehicle's actual ***cash*** value.

Progressive hired Mr. Spizzirri, Managing Director of B. Riley Financial, to provide an expert report. Mr. Spizzirri designed a survey and hired third-party Sharon Noot of Noot, Inc., to conduct it. The survey was ostensibly to ask dealerships if they would negotiate off the advertised prices of a vehicle. Ms. Noot provided the results to (at least) Mr. Spizzirri's colleague, Wen Tan. Mr. Tan "worked under [Mr. Spizzirri's] direct supervision and control." Spizzirri Report at ¶ 2.

Prior to Mr. Spizzirri's deposition, Defendants produced a summary of survey results called "Progressive Casualty Summary Worksheet" ("Summary"). The Summary included a response to one survey question and no underlying data. The "Summary Worksheet" provided no indication of how the questions were framed, how it was determined whether the answer was "Yes" or "No," whether the respondent was an owner/manager answering or just a salesperson employee, how much the respondent was purportedly willing to negotiate, the terms of the transaction in which the purported negotiation was occurring, and so forth. This was odd because the Summary indicated elsewhere that 11 questions were asked. Nevertheless, Mr. Spizzirri professed ignorance about whether the questions were even asked and, if so, what happened to the missing survey data.

Plaintiffs subpoenaed Ms. Noot in hopes of uncovering the missing data. Progressive claimed discovery from Ms. Noot was inappropriate because she is a "consulting expert," which this Court rejected. ECF No. 144. Shortly after the Court's intervention, Progressive produced the full survey information and correspondence. This full survey information undermines Mr. Spizzirri's opinions and is inconsistent with the "Summary" that had originally been produced. For example, it shows that Mr. Spizzirri instructed the interviewers, who posed as potential buyers, to: (1) tell the dealership's employee they would be trading in a vehicle[1]; and (2) that they would finance the purchase through the dealership. In other words, Defendants took two of the many things Plaintiffs' own experts explained might lead to a recorded sales price that is less than listed price (but which are irrelevant to ***cash*** market value) and used both factors in pretending to seek to purchase a vehicle. Bottom line, the actual survey results undermine Mr. Spizzirri's opinions and

---

[1] Of course, class members who have totaled their vehicle have no trade in.

support Plaintiffs' case; therefore, Plaintiffs should have the opportunity to question Mr. Spizzirri about the actual results of his survey.

Presumably recognizing the full results were problematic, someone made the decision to withhold them. Initially, the blame was placed on Ms. Noot. This seemed unlikely—why would a disinterested party not report the survey results to the person that hired her to obtain them? It turns out, Ms. Noot did not withhold those results. After this Court granted Plaintiffs' motion to compel the deposition of Ms. Noot (ECF No. 150), she testified that she had given the full results to B. Riley from the outset. Indeed, she testified she did not gather or even look for a single document in response to the subpoena and Order. So the full spreadsheet and documents produced in response to the Order were in Defendants' possession—or at least B. Riley's possession—all along.

This raises two issues. First, who made the decision to withhold the full survey results? Ms. Noot testified she gave all the information to Mr. Tan at B. Riley, and Mr. Spizzirri asserted everyone "worked at [his] direct supervision and control." If, contrary to his prior testimony, it was Mr. Spizzirri who made the decision, then Plaintiffs should have the opportunity to question him about why and inquire about the full results of the survey. Again, the Summary spreadsheet provided by Mr. Spizzirri with his Report ends at Column J with a "Yes/No" on whether a dealership purportedly represented they were willing to negotiate. The examples Plaintiffs provided the Court in their motion to compel the deposition of Ms. Noot demonstrate these characterizations of the survey responses were false. ECF No. 147 at 1–2. In any event, after receiving an answer, Mr. Spizzirri instructed Noot to follow up and ask, if so, what amount could be discounted. But the Summary did not include that information, and Mr. Spizzirri testified he did not even know if the question was asked, let alone what the answers were. In an abundance of caution, Plaintiffs' counsel explicitly clarified this was not a situation where Mr. Spizzirri or Defendants "just didn't like the answers so . . . didn't produce" them, and Mr. Spizzirri represented he simply did not know if the questions were asked or what the answers were. We now know that B. Riley was given the full survey results by Noot and withheld them—amongst other relevant information—instead of producing the full results.

If, however, Mr. Tan for some reason independently decided to delete the information from the spreadsheet and withhold the communications, Plaintiffs should have the opportunity to depose Mr. Tan, given he would be the person with knowledge of the underlying survey information, data, and communications as well as knowledge as to why (and at whose direction) he deleted and altered the results. *See Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 266 (W.D. N.Y. 2013) (party was entitled to depose colleague of an expert who was involved in verifying information and assisted in the process and drafting of report) (citing *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 30-31 (W.D.N.Y. 2002) (deposition of expert's associate appropriate where report "was the result of substantial collaborative work")). And in any event, Plaintiffs should have the opportunity to re-open Mr. Spizzirri's deposition to inquire about the newly discovered full results of the survey he designed and supervised.

For the foregoing reasons, Plaintiffs request the Court to compel the deposition of Mr. Tan (limited to three hours) and for leave to re-open the deposition of Mr. Spizzirri.

Respectfully submitted,

Hank Bates

cc: All Counsel of Record via ECF

Application GRANTED in part and DENIED in part.

Plaintiffs' application for a deposition of Mr. Tan is DENIED pursuant to Federal Rule of Civil Procedure 26(b)(4)(D).  Plaintiffs made the showing, required before deposing a non-testifying expert such as Mr. Tan, of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  Fed. R. Civ. P. 26(b)(4)(D). Plaintiffs seek to depose Mr. Tan about which of the underlying data from the Noot survey was and was not provided to Mr. Spizziri and why.  At this point, Plaintiffs have the underlying Noot data, and they have Mr. Spizziri's testimony about what data he considered, so they also know what was not considered.  Plaintiffs do not need Mr. Tan's testimony to obtain those facts. Plaintiffs' insinuation that they need to depose Mr. Tan to determine whether Mr. Spizziri lied under oath in his own deposition is speculative.  Any questioning of Mr. Tan about *why* certain data were and were not provided to Mr. Spizziri appears likely to tread on the decisionmaking processes of Defendants' counsel and other core work product to which Plaintiffs are not entitled.  In any event, Plaintiffs can obtain opinions on whether the purportedly omitted data are relevant to or would alter Mr. Spizziri's opinions by other means, namely from Spizziri himself.

Plaintiffs' application to reopen the deposition of Mr. Spizziri is GRANTED.  As Defendants note, a second deposition may be appropriate where, as here, "new information or new allegations arose post-deposition that would have affected the questioning at the initial deposition." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14 Civ. 1254, 2019 WL 1533212, at *2 (S.D.N.Y. Apr. 9, 2019).  The reopened deposition shall be limited to four hours and to questioning about the Noot survey and information acquired about that survey since Mr. Spizziri's first deposition.

The parties shall meet and confer in good faith regarding the scheduling of the deposition and the affect it will have, if any, on the briefing schedule for Plaintiffs' motion for class certification.

Dated: October 26, 2022
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE