UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                        :
DOMINICK VOLINO, *on behalf of themselves*              :
*and all others similarly situated*,                    :
                                         Plaintiff,     :          21 Civ. 6243 (LGS)
                                                        :
                       -against-                        :          **OPINION AND ORDER**
                                                        :
PROGRESSIVE CASUALTY INSURANCE                          :
COMPANY, et al.,                                        :
                                       Defendants.      :
-------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

        Seven Plaintiffs bring this action on behalf of themselves and a class of others against

Defendants, who all provide auto insurance to New York residents.  Defendants are Progressive

Casualty Insurance Company, Progressive Advanced Insurance Company, Progressive Specialty

Insurance Company and Progressive Max Insurance Company.  Plaintiffs challenge an adjustment

Defendants apply that reduces the value of totaled vehicles and, consequently, the amount paid on

insurance claims for those vehicles.

        The Consolidated Amended Complaint ("Complaint") asserts three causes of action --

breach of contract, deceptive practices in violation of New York General Business Law ("GBL")

§ 349 and a declaratory judgment that Defendants' methodology violates Regulation 64, 11

N.Y.C.R.R. § 216.7 ("Regulation 64").  The Complaint seeks damages and an injunction

restraining Defendants from applying the challenged adjustment.  Class certification was granted

on March 16, 2023, certifying a Breach of Contract Class and a GBL § 349 Class, each with four

sub-classes corresponding to each of the four Defendants.

Plaintiffs move for partial summary judgment on their declaratory judgment claim, and Defendants move for summary judgment on all claims.  For the reasons below, Plaintiffs' motion is denied, and Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

The following undisputed facts are drawn from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and other submissions on these motions.  The facts are undisputed except as noted.

Plaintiffs bring this action on behalf of themselves and others similarly situated in New York who received payment for the loss of a totaled vehicle from the insurer Defendants. Plaintiffs allege that Defendants used valuation reports that applied an improper and deceptive adjustment -- the so-called "Projected Sold Adjustments" (the "PSAs") -- to reduce the resulting actual cash value (the "ACV") payable to Plaintiffs under Defendants' automobile insurance policies.

Each Plaintiff was involved in a car wreck resulting in the total loss of their vehicle. Plaintiffs Lukasik, Plotts, Costa, Goodier, Verardo and Lippa each had automobile insurance through a policy issued by one of the Defendants.  Plaintiff England's vehicle was totaled in an accident with a driver insured by one of the Defendants, which covered the claim after determining that the insured was at fault.

Defendants declared each of Plaintiffs' vehicles to be a total loss.  Pursuant to the relevant insurance policies (the "Policies"), Defendants agreed to pay for the loss to Plaintiffs' covered vehicles.  Defendants' liability was limited to the lesser of: the ACV of the damaged vehicle at the time of the loss, the replacement cost or the cost of repair.  According to the Policies, ACV is "determined by the market value, age, and condition of the vehicle at the time

2

the loss occurs." The Policies state that Defendants "may use estimating, appraisal, or injury evaluation systems to assist [them] in adjusting claims under this policy and to assist [them] in determining the amount of damages, expenses, or loss payable under this policy," and that "[s]uch systems may be developed by [Defendants] or a third party and may include computer software, databases, and specialized technology."

To estimate the value of Plaintiffs' total losses, Defendants performed in-person inspections of Plaintiffs' vehicles and obtained vehicle valuation reports ("Reports") prepared by non-party Mitchell International, Inc. ("Mitchell"). The Mitchell valuation software used by Defendants is called WorkCenter Total Loss ("WCTL") and was approved for use in New York by the State's Superintendent of Insurance. WCTL is used by multiple insurance companies to value vehicles following total loss.

To determine the market value of a totaled vehicle, WCTL first generates an initial value by identifying comparable vehicles that are listed for sale or were recently sold in the insured's local market area. The list prices for comparable vehicles are pulled from online automobile advertising sources. The sold prices for comparable vehicles are supplied by J.D. Power and Associates ("JDPA"), based on its regularly updated database. The values of these comparable listed and sold vehicles are adjusted to account for differences in equipment, mileage and vehicle configuration. If the JDPA data supplies a "sold" price for a comparable vehicle, no further valuation adjustments are made to that comparable vehicle. If the JDPA data does not supply a "sold" price for a comparable vehicle, a PSA is applied to the comparable vehicle's list price to estimate the price for which it will ultimately sell. Defendants contend that the PSAs are designed to reflect consumer purchasing behaviors, i.e. negotiating a sales price lower than the list price. Because PSAs are purportedly intended to model consumer negotiation for vehicles, if

a comparable vehicle is listed at a dealership that is identified as a "no haggle" or "one price" dealership, no PSA is applied to that comparable vehicle.

To calculate PSAs, JDPA first looks to list-to-sold transactions that occurred in the relevant regional area.  If a sufficient number of transactions cannot be identified locally, JDPA looks to statewide and, if necessary, nationwide transactions.  Defendants claim that JDPA then determines a ratio that best describes the relationship between the sold and list prices. That ratio is applied to the listed comparable vehicle to yield a dollar adjustment, the PSA.  The ratios used to calculate PSAs are updated at intervals throughout the year, based on data collected in the time since the previous update.

After the PSAs are applied to the comparable vehicles, the comparable vehicles' values are averaged to yield the totaled vehicle's base value.  WCTL then adjusts that base value to reflect the totaled vehicle's condition before the loss occurred.  Defendants' adjusters typically inspect each totaled vehicle, examining and rating thirteen components of each vehicle on a scale of 1-5.  Using those condition ratings and other factors like model and mileage, the WCTL estimates the totaled vehicle's market value in a Report.  What Defendants pay to settle a total-loss claim is not always equal to the Report value, and adjusters and claims managers are permitted to negotiate to resolve the claim.  This sometimes results in claims that are settled for more than the Report value.

Plaintiffs Lukasik, Costa and England are not currently insured by any Defendant. Plaintiffs Goodier, Costa, England, Lippa, Plotts and Lukasik all testified that they received a Report from Defendants while settling their total-loss claims.

II.     **STANDARD**

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[1] "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020).

III.    **DISCUSSION**

   A. **Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs move for summary judgment on their third claim seeking a "declaration" that Defendants violated Regulation 64. Although stated as an independent cause of action, this claim offers an alternative legal basis to find liability on the other two causes of action. Plaintiffs' motion, echoing the Complaint, seeks as a consequence of finding a Regulation 64 violation, summary judgment on liability for the other two claims with only damages remaining to be determined. The third cause of action seeks both declaratory and related injunctive relief.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Plaintiffs' motion is denied as Plaintiffs lack standing to seek a declaratory judgment and injunctive relief.

"To satisfy the irreducible constitutional minimum of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). "Each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation." *Id.* At the summary judgment stage, "a plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *accord Snyder v. LVNV Funding LLC*, No. 21 Civ. 7794, 2023 WL 1109645, at *3 (S.D.N.Y. Jan. 30, 2023). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *accord Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023).

It is well-settled that "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004); *accord Choi's Beer Shop, LLC v. PNC Merch. Servs. Co., L.P.*, 855 F. App'x 20, 21 (2d Cir. 2021) (summary order). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992); *accord Choi's Beer Shop*, 855 F. App'x at 21-22. "[T]hreatened injury must be *certainly impending* to constitute injury in fact, and allegations of *possible* future injury are not sufficient."

6

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022).  Alternatively, an allegation of future injury may suffice when "there is a substantial risk that the harm will occur."  *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021).  A putative injury that occurs only at the end of a "highly attenuated chain of possibilities" is not sufficient to confer the requisite standing for declaratory relief.  *See Fac., Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ.*, 11 F.4th 68, 76 (2d Cir. 2021); *accord Doe v. McSweeney*, No. 21-2191-CV, 2022 WL 1451383, at *1 (2d Cir. May 9, 2022) (summary order).

Though not binding on this Court, the recent Eleventh Circuit case, *Mack v. USAA Casualty Insurance Co.*, 994 F.3d 1353 (11th Cir. 2021), persuasively explains why Plaintiffs lack standing for their declaratory judgment claim and related demand for injunctive relief.  The underlying facts are virtually identical.  There, as here, the plaintiff "totaled his car and was not satisfied with the method his insurer, USAA Casualty Insurance Company, used to calculate what it paid him."  994 F.3d at 1354.  Suing on behalf of himself and a putative class, the plaintiff sought "declaratory judgments that [the insurer's] method was inconsistent with [state] law and the insurance policy."  *Id.*  The court reasoned that because the plaintiff sought prospective relief in the form of a declaratory judgment "he must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  *Id.* at 1357.  However, "the possibility that a plaintiff may someday be in another car accident and still be insured by the insurance company under the same or a similar policy being interpreted the same way, thereby having this issue present itself again is too contingent to constitute a substantial likelihood of future injury."  *Id.*  Because the plaintiff's claim of future injury depended on this attenuated speculation, he lacked the requisite standing for the declaratory judgment he sought in federal court.  *Id.*  At least two other district courts have addressed nearly identical declaratory

judgment claims and similarly dismissed them for lack of standing, among other reasons. *See Brown v. Progressive Mountain Ins. Co.*, No. 21 Civ. 175, 2022 WL 18777475, at *8 (N.D. Ga. Aug. 15, 2022) (dismissing claims for declaratory and injunctive relief for lack of standing where plaintiff did not allege that he is still a policyholder, will likely suffer another total loss accident and have a settlement issued based on a valuation report that includes a PSA); *Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 217 (D. Del. 2022) (dismissing declaratory judgment claim because Plaintiff seeks "backward-looking" relief, not "forward-looking" relief from a "future injury").

For the same reasons, Plaintiffs are denied summary judgment on their claim for declaratory and injunctive relief. Plaintiffs cannot show a threat of future, impending injury from Defendants' alleged misconduct sufficient to confer standing. Plaintiffs have not furnished evidence that they will be insured by Defendants; that they will suffer another total loss accident and that Defendants will satisfy their insurance claims by relying on the offending PSA. This "highly attenuated chain of possibilities[] does not satisfy the requirement that threatened injury must be certainly pending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *accord Roberts v. Bassett*, No. 22-622-CV, 2022 WL 16936210, at *2 (2d Cir. Nov. 15, 2022) (summary order). Indeed, Plaintiffs Lukasik, Costa and England, fail on the first of these contingencies, as they are not presently insured by Defendants.

Plaintiffs contend they "have put on proof of their unredressed, ongoing injury." This conflates unredressed injuries from past conduct with an imminent future harm. *See Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (declining declaratory relief where "[a]ny declaration could say no more than that [the defendant] had violated federal law *in the past*") (emphasis added); *accord H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016)

(summary order) ("[T]he requested declaratory relief is aimed at past conduct, a target that is impermissible."). As Plaintiffs lack standing to seek declaratory or injunctive relief, their motion for summary judgment on the third cause of action is denied.

**B. Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on all three causes of action -- breach of contract, deceptive practices in violation of GBL § 349 and the declaratory judgment claim discussed above. Because Plaintiffs lack standing to seek declaratory and injunctive relief, Defendants are granted summary judgment on the third cause of action and the Complaint's demands for a declaration and injunction. However, because that cause of action asserts a theory of liability that is a basis for the other two claims -- namely that Defendants violated Regulation 64, which in turn constitutes a breach of contract and a deceptive practice -- that theory of liability is discussed below. For the following reasons, Defendants are granted summary judgment on the Regulation 64 theory of liability, and are denied summary judgment on the breach of contract and deceptive practices claims.

**1. Regulation 64**

Defendants are granted summary judgment on Plaintiffs' theory of liability that Defendants' PSA deduction violates Regulation 64. The Complaint alleges that Defendants' PSA adjustment violates Regulation 64 in three ways: (1) it fails to produce "statistically valid" fair market values; (2) it violates the temporal (90-day) restriction and (3) it violates the geographic local market area (100-mile radius) restriction. The second and third -- violations of the temporal and geographic restrictions -- rest on an incorrect reading of the regulation. The first alleged violation, that the PSA calculation is not statistically valid, is duplicative of the breach of contract and deceptive practices claims.

When an insurer elects to make a cash settlement of a total loss, "its minimum offer, subject to applicable deductions, must be one" of the three options enumerated in Regulation 64. 11 N.Y.C.R.R. § 216.7(c)(1).  Defendants elected the third of these options, which states:

> If the insurer elects to make a cash settlement, its minimum offer . . . must be one of the following . . .
> (iii) A quotation obtained from a computerized database, approved by the superintendent, that produces statistically valid fair market values for a substantially similar vehicle, *within the local market area* that meets all the following minimum criteria:
> (*a*) . . .
> (*b*) it shall rely upon values derived from licensed dealers, which have minimum sales of 100 motor vehicles per year *in the local market area* for all vehicles of seven model years or less of age, and be based upon the physical inventory of vehicles sold *within the 90 days prior to the loss* and vehicles which are available; and
> (*c*) it shall monitor the average retail price of private passenger automobiles when there is insufficient data or inventory available from licensed dealers to ensure statistically valid *local market area* values.

11 N.Y.C.R.R. § 216.7(c)(1)(iii) (emphasis added).  Regulation 64 defines "local market area" as "a *100-mile radius*, limited to within the United States, of the place of principal garagement of the insured's motor vehicle."  11 N.Y.C.R.R. § 216.7(a)(10) (emphasis added).  "Applicable provisions of the Insurance Law" -- including Regulation 64 -- "are deemed to be part of an insurance contract as though written into it."  *Trizzano v. Allstate Ins. Co.*, 780 N.Y.S.2d 147, 149 (2d Dep't 2004); *accord Milligan v. GEICO Gen. Ins. Co.*, No. 20-3726-CV, 2022 WL 433289, at *2 (2d Cir. Feb. 14, 2022) (summary order) (New York law).  Accordingly, a violation of Regulation 64 may breach an insurance policy.  *See Milligan*, 2022 WL 433289, at *2.

The meaning of Regulation 64's temporal and geographic restrictions is a question of first impression.  "[A]s with all matters of statutory interpretation, [the] goal is to give force to the intent of the Legislature . . . . "  *James B. Nutter & Co. v. Cnty. of Saratoga*, 209 N.E.3d

1255, 1258 (N.Y. 2023).  Interpretation of the provision "therefore begin[s] with the plain text --

the clearest indicator of legislative intent." *Id.*  "[C]ourts should construe unambiguous language

to give effect to its plain meaning." *Id.*  "[W]hen a statute is part of a broader legislative scheme,

its language must be construed in context and in a manner that harmonizes the related provisions

and renders them compatible." *Id.*  "That is, a statute must be construed as a whole, and its

various sections must be considered with reference to one another." *Id.* at 1259.  "In the absence

of a statutory definition," New York courts "construe words of ordinary import with their usual

and commonly understood meaning, and in that connection have regarded dictionary definitions

as useful guideposts in determining the meaning of a word or phrase." *Walsh v. N.Y. State*

*Comptroller*, 144 N.E.3d 953, 955-56 (N.Y. 2019).  Applying these principles here, the plain

language of Regulation 64 does not support Plaintiffs' interpretation.

As to the temporal restriction, Regulation 64 requires that the database producing the fair

market values "be based upon the physical inventory of vehicles sold *within the 90 days prior to*

*the loss*." 11 N.Y.C.R.R. § 216.7(c)(1)(iii) (emphasis added).  Defendants use a database that

determines ACV based on (1) an actual sales price, (2) an advertised price reduced by the PSA,

which stands in for the value of a sold price or (3) for "no haggle" dealerships, the advertised

price without a PSA.  Plaintiffs challenge only the PSAs in the second option, which are updated

periodically throughout the year at intervals greater than 90 days.  Plaintiffs claim that the

regulation's 90-day requirement is violated because the PSAs are based on some data older than

90 days after the date of the claimant's loss.

As to the geographic restriction, Regulation 64 requires the database to produce fair

market values for "substantially similar vehicles within the local market area," based on data

from "dealers" that have certain annual sales "in the local market area."  11 N.Y.C.R.R. §

216.7(c)(1)(iii).  When dealer information is insufficient, insurers must monitor average retail prices "to ensure statistically valid local market area values."  *Id.*  As noted above, "local market area" means a 100-mile radius from where the claimant's car is garaged.  *Id.*; 11 N.Y.C.R.R. § 216.7(a)(10).  Plaintiffs claim that the PSAs violate the 100-mile radius rule because PSAs are sometimes based on statewide or nationwide data if local data is insufficient, and do not in any event incorporate data about where a claimant's car is garaged.

Thus, the issue as to both the alleged temporal and geographic violations is whether Regulation 64 requires that an adjustment to market value (the PSA) be based on data obtained from within 90 days of the loss and within a 100-mile radius of the claimant's garage, when the market value being adjusted is obtained as required by the regulation.  The average PSA adjustment is less than 8%, meaning that 92% of the value complies with the 90-day and 100-mile requirements.  The regulation does not explicitly answer this question, but a fair reading does not require this degree of exactitude.

The objective of the regulation's database option is to produce "statistically valid fair market values for substantially similar vehicles" to the claimant's totaled vehicle.  The regulation provides "minimum criteria" to comply with that purpose.  11 N.Y.C.R.R. § 216.7(c)(1)(iii).  The 90-day and 100-mile radius criteria for comparable sales are intended to ensure that the comparator sales are "substantially similar," not necessarily identical.[2]

Regulation 64 further states that the values must be "derived from licensed dealers" and "based upon the physical inventory of vehicles sold within the 90 days prior to the loss."  11

---

[2] "Substantially similar vehicle" is defined to mean "a vehicle of the same make, model, year, . . . condition" and approximate mileage. 11 N.Y.C.R.R. § 216.7(a)(4).

N.Y.C.R.R. § 216.7(c)(1)(iii).  This language -- "derived" and "based" -- does not denote that

such values must *equal* the values of cars sold in the local market area within the last 90 days.

A recent Eleventh Circuit opinion involving materially similar circumstances and regulation,

*Signor v. Safeco Insurance Co.*, 72 F.4th 1223 (11th Cir. 2023), supports this interpretation.  In

*Signor*, the plaintiff was involved in a total loss accident.  After her auto insurer paid her what it

deemed to be the actual cash value of her vehicle -- a value she contested -- she filed a putative

class action against the insurer, alleging that it breached the insurance policy because its

methodology to calculate actual cash value ran afoul of Florida law.  72 F.4th at 1226.  The

Florida statute in question allows an insurer to settle total loss claims based on the actual cost to

purchase a comparable motor vehicle.  That actual cost, in the language of the statute, "may be

derived from . . . two or more such comparable motor vehicles available [in the local market

area] within the preceding 90 days."  *Id.* at 1128.  Construing this language, the Eleventh Circuit

held that "[t]he statute's use of 'derived from' instead of 'equal to' or similar language means

that the cost of a comparable vehicle . . . must be the starting point for determining actual cost,

but not necessarily the ending point.  The actual cost need not be the *same* as the cost of the

comparable vehicles."  *Id.* at 1229.  Here, vehicles that conform to Regulation 64's temporal and

geographic requirements comprise the starting point for Defendants' calculation of value.  But

Regulation 64 does not require that this be the end of the inquiry, requiring only that fair market

values be *derived* from values that meet the temporal and geographic requirements.

The regulation explicitly acknowledges that there may be "insufficient data or inventory

available from licensed dealers to ensure statistically valid local market area values," and in that

case points to "the average retail price" of personal cars.  11 N.Y.C.R.R. § 216.7(c)(1)(iii)(c).

This shows that Regulation 64 itself contemplates reliance on data from beyond the local market

area when necessary.  The PSA calculations use statewide data and, when necessary, nationwide data when local data is insufficient.

The Court's aim in construing the regulation is to promote the legislature's intent.  *See James B. Nutter & Co.*, 209 N.E.3d at 1258.  Regulation 64 is designed to protect consumers and ensure that drivers involved in total losses receive "the reasonable purchase price . . . of a new identical vehicle," less certain applicable reductions for depreciation.  11 N.Y.C.R.R. § 216.7(c)(3); *see also Milligan*, 2022 WL 433289, at *1.  Read holistically, Regulation 64 seeks to ensure that a purchaser of auto insurance will receive compensation that fairly reflects the market value of the lost vehicle.  This does not deprive insurers of some leeway in designing the formulas they use for those calculations.  The Court declines to adopt a reading of the regulation that imputes the temporal and geographic requirements to every datapoint involved in the computation of a lost vehicle's market value.  Defendants' motion for summary judgment on Plaintiffs' claim that the PSAs violate Regulation 64's temporal and geographic requirements is granted.

Finally, summary judgment is also granted on the third and final prong of Plaintiffs' theory of liability based on Regulation 64 -- that Defendants failed to produce "statistically valid" fair market values for total loss vehicles.  11 N.Y.C.R.R. § 216.7(c)(1)(iii).  This argument under Regulation 64 mirrors Plaintiffs' theory of misleading and deceptive practices under GBL § 349, and their theory of breach of contract that Defendants failed to pay insureds the actual cash value of their total loss claims as promised.  These claims and theories all boil down to the same accusation that Defendants' application of the PSAs generates an inaccurate and understated cash value for claimants' totaled vehicles.  Plaintiffs' theory that the PSAs violate Regulation 64's statistical validity requirement "arise[s] from the same facts and seeks the

14

identical damages" as the breach of contract and GBL § 349 claims.  *See Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015).  Tying Regulation 64 to Plaintiffs' straightforward allegation is not only duplicative, but also adds a needless level of complexity to the question to be posed to the jury at trial.  Because this last prong of Plaintiffs' Regulation 64 argument in substance is redundant of the theories underlying the breach of contract and GBL § 349 causes of action, which survive Defendants' motion, summary judgment is granted on the Regulation 64 "statistical invalidity" theory of liability.  *Cf. id*. ("Under New York law, claims are duplicative when both arise from the same facts and seek the identical damages for each alleged breach."); *accord Wiggins v. Unilever U.S., Inc.*, No. 21 Civ. 1964, 2023 WL 7005147, at *19 (S.D.N.Y. July 26, 2023).

### 2. Deceptive or Misleading Practices

Defendants' motion for summary judgment on the GBL § 349 claim is denied because a reasonable jury could find that Defendants engaged in misleading practices regarding the calculation of the PSAs and the resulting purported value of Plaintiffs' totaled vehicles.  GBL § 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  "To ensure the broadest enforcement of [§ 349(a)], the legislature added a private right of action for injunctive and monetary relief." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021).  To prevail on a GBL § 349 claim, a plaintiff must prove: "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception."  *Id.*

When evaluating whether an act was deceptive or misleading, New York courts apply an objective standard, asking whether the representation or omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000); *accord Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 417 (2d Cir. 2023). The New York Court of Appeals' adoption of an "objective definition of deceptive acts and practices . . . which may be determined as a matter of law or fact (as individual cases require)," was intended to avoid "a tidal wave of litigation against businesses that was not intended by the Legislature." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (New York law).

*Nick's Garage, Inc.*, 875 F.3d 107, is instructive here, regarding both the application of GBL § 349 and Defendants' burden on their motion for summary judgment. In *Nick's Garage*, various vehicle owners assigned their insurance claims to the plaintiff, an automobile repair shop, after it had repaired their vehicles and submitted damage claims to the insurer. *Id.* at 111. The plaintiff, suing on behalf of the assignors, alleged that the insurer had violated GBL § 349 by falsely representing to policyholders that it was "willing to pay prevailing competitive labor rates" for repairs, and that policyholders could obtain repairs at the shop of their choice. *Id.* at 113. The district court found as a matter of law that the insurer had not engaged in materially misleading conduct and granted the insurer summary judgment on the GBL § 349 claim. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, No. 12 Civ. 777, 2015 WL 1481683, at *14 (N.D.N.Y. Mar. 31, 2015), *aff'd in part, vacated in part Nick's Garage*, 875 F.3d 107. On appeal, the Second Circuit reversed, finding "a genuine issue of fact as to whether Insurer engaged in misleading practices concerning the labor rates it paid repair shops." 875 F.3d at

16

124.  The plaintiff had proffered sufficient evidence from which a jury could find that the insurer "routinely refused to pay the prevailing competitive labor rates, and that the rates Insurer agreed to pay reflected not the prevailing competitive rates in the market but rates that a potentially large volume customer could prevail on repair shops to accept." *Id.* at 124.

As the court in *Nick's Garage* explained, while at trial "the plaintiff bears the burden of proving every essential element of its claim," on a motion for summary judgment, "it is the moving party's burden to show in its motion papers that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 115.  "The mere assertion by a defendant moving for summary judgment that the plaintiff has not produced any evidence to support an essential element of the plaintiff's claim does not satisfy the burden that Rule 56(a) imposes." *Id.*  "A moving defendant's mere assertion that a plaintiff has not produced evidence that could prove its claim fails to show that the plaintiff lacks the necessary evidence, unless defendant also shows that plaintiff was obligated by discovery demand or court order to produce the evidence or that he voluntarily undertook to make the showing." *Id.*  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Nick's Garage*, 875 F.3d at 116 & n.5.

Here, Defendants argue principally that "Plaintiffs have no evidence that the PSA, or Progressive's description of it, was misleading.  Fatally, Plaintiffs have not attempted to prove that a reasonable consumer is likely to be deceived by Progressive's description of the PSA."  "Statements like these misperceive the allocation of burdens upon a motion for summary judgment." *Nick's Garage*, 875 F.3d at 115.  Indeed, Plaintiffs *have* submitted evidence

showing that the median used car in New York sells for a greater percentage of its advertised price than as represented by the PSAs.  Several industry experts testified that the PSAs are in conflict with actual market pricing.  This evidence is sufficient to create an issue of fact on Plaintiffs' claims that Defendants misled consumers in the application of the PSAs.

Defendants cite *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83 (S.D.N.Y. 2021), for the proposition that "the knowledge and expectations of reasonable consumers . . . cannot be resolved without surveys, expert testimony, and other evidence of what is happening in the real world."  553 F. Supp. 3d at 104.  But the reasoning of *Cooper* was tailored to the specific context of that case -- consumers' assumptions about whether drinks containing wine or liquor could be purchased in a New York convenience store -- and the case is not binding in any event. Defendants have identified no legal authority that creates a freestanding requirement that a plaintiff furnish "surveys, expert testimony, and other evidence of what is happening in the real world" to prevail on a GBL § 349 claim.  Summary judgment is denied on the GBL § 349 claim.

### 3.  Underpayment of Plaintiffs

Defendants seek summary judgment on the GBL § 349 and breach of contract claims on the basis that Plaintiffs have not shown causation or damages.  This argument is rejected because a reasonable jury could find from the record evidence that Defendants' conduct led to Plaintiffs' underpayment.

Like a GBL § 349 claim, discussed above, a breach of contract claim also requires proof of damages and causation.  Under New York law, "[t]he essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting

from the breach." *Morrow v. Vibration Mountings & Controls, Inc.*, 203 N.Y.S.3d 377, 379 (2d

Dep't 2024); *accord Milligan,* 2022 WL 433289, at *2.

      Defendants argue that Plaintiffs have presented no evidence of the ACV of their vehicles

and that, accordingly, there is no evidence from which a jury could conclude that Plaintiffs were

underpaid.  But, as Judge Batten recently explained in a nearly identical case pending in the

Northern District of Georgia, *Brown v. Progressive Mountain Insurance Co.*, No. 21 Civ. 175,

2024 WL 399479 (N.D. Ga. Feb. 1, 2024), this "requires implicit acceptance of [Defendants']

theory of liability since Plaintiffs have indeed put forward evidence supporting their theory of

liability -- that the PSA counters the market and any application of the PSA results in an ACV

not based on the market value of a vehicle."  *Brown,* 2024 WL 399479 at *3.  Two of Plaintiffs'

experts testified that list prices unaltered by a PSA reflect actual market value.  The Opinion

granting class certification observed that "[Defendants'] own valuation data, with and without

the PSA, constitutes class-wide proof of actual cash value, which can be compared with the

amount Plaintiffs were paid to determine liability and damages."  In other words, the parties

present competing viewpoints on PSAs:  Defendants argue that PSAs are a valid component of

the method it uses to calculate ACV; Plaintiffs argue that PSAs are invalid because they conflict

with market forces and skew the ACV downward from what the market would actually pay.  It is

for the jury, not this Court on summary judgment, to decide which of these theories prevails on

the evidence presented.

      Defendants also argue that that the testimony of Plaintiffs' expert, Jason Merritt, is

insufficient to support Plaintiffs' claims of underpayment.  Defendants contend that Merritt's

appraisals are "just word-of-mouth," and that his assessments are therefore unreliable to establish

a genuine issue of material fact.  They also contend that Merritt's opinion "contradicts his

testimony and his typical practice when he conducts appraisals."  But as the ruling on

Defendants' *Daubert* motion made clear, "[t]hat Merritt did not cite specific, documented

appraisal standards goes to the weight, not the admissibility of his testimony."  That weight is for

the jury to determine.

### 4.  Plaintiffs' Individualized Deficiencies

Defendants' motion for summary judgment as to individual Plaintiffs is denied.

Defendants argue that Plaintiff Lukasik's claims are barred by the doctrine of accord and

satisfaction because Lukasik was paid an additional $1,000 to settle his claim.  "As a general

rule, acceptance of a check in full settlement of a disputed unliquidated claim operates as an

accord and satisfaction discharging the claim. . . .  Such agreements are enforceable, however,

only when the person receiving the check has been clearly informed that acceptance of the

amount offered will settle or discharge a legitimately disputed unliquidated claim."  *Merrill*

*Lynch Realty/Carll Burr, Inc. v. Skinner*, 473 N.E.2d 229, 232 (N.Y. 1984); *accord MCM Prods.*

*USA, Inc. v. Botton*, No. 16 Civ. 1616, 2016 WL 5107044, at *5 (S.D.N.Y. Sept. 19, 2016).  On

the record presented, it is uncertain whether Lukasik was "clearly informed" that acceptance of

the offer would extinguish a claim under his policy.  *See, e.g., Pro-Com Prod., Inc. v. Data*

*Vision Comput. Video, Inc.*, 169 N.Y.S.3d 914 (App. Term., 2d Dep't, 2022) (finding an accord

and satisfaction where the check's endorsement line "noted that it was in full satisfaction of all

monies owed").  Defendants have not carried their burden of showing that Lukasik's claim is

barred by the doctrine of accord-and-satisfaction.

Defendants also contend that the claims of Plaintiffs Plotts, Lukasik, Goodier, England

and Verardo must be dismissed because the ACV that Defendants calculated for their vehicles

exceeded the list prices of some comparable vehicles used to calculate their WCTL base values.

This argument is unpersuasive.  The parties agree that the transaction data used to calculate PSAs is retrospective.  There is no evidence that the comparable vehicles Defendants point to were even available for purchase at the time Plaintiffs experienced their total losses.  Contrary to Defendants' assertion, the parties do not agree that "Plotts, Lukasik, Goodier, England [and] Verardo could have replaced their totaled vehicles by purchasing one of those available comparable vehicles for less than Progressive paid them."  This alone establishes an issue of fact as to these Plaintiffs' claims.  Summary judgment is denied as to Plaintiffs Plotts, Lukasik, Goodier, England and Verardo.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment on the Third Cause of Action is DENIED.  Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Defendants' motion is granted on the Third Cause of Action and the Complaint's requests for declaratory and injunctive relief, and on the theory of liability based on Regulation 64.  Defendants' motion is denied on the First Cause of Action for breach of contract and the Second Cause of Action for violation of GBL § 349.

The Clerk of Court is respectfully directed to close the motions at Dkts. 242, 243, 250 and 252.

Dated:  March 22, 2024
         New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE