**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOMINICK VOLINO, ET AL.,<br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE<br>COMPANY, ET AL.,<br>Defendants.<br><br>-------------------------------------------------<br>MICHAEL VERARDO, ET AL.,<br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE<br>COMPANY, ET AL.,<br>Defendants. | Civil Action No. 1:21-cv-6243-LGS<br><br><br><br><br><br><br><br>Civil Action No. 1:22-cv-01714-LGS |

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................................. 4

III.    SUMMARY OF THE SETTLEMENT TERMS ....................................................... 5

      A.    The Settlement Classes Extend the Previously Certified Litigation Classes Through
           the Date of Preliminary Approval. ..................................................................... 5

      B.    The Settlement Benefits: $48,000,000 Common Fund with No Reverter. ................... 6

      C.    The Notice Program. ........................................................................................ 7

      D.    Plan of Allocation. .......................................................................................... 8

      E.    Distribution of Payments to the Class. ............................................................ 10

      F.    Release. ........................................................................................................ 11

      G.    Applications for (i) Attorneys' Fees and Litigation Expenses, and (ii) Class
           Representatives' Service Awards. ..................................................................... 12

IV.     PROPOSED SCHEDULE OF EVENTS .................................................................. 12

V.      APPLICABLE LEGAL STANDARDS ................................................................... 13

VI.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............ 15

      A.    The Settlement Is Procedurally Fair. ................................................................ 15

      B.    The Settlement Is an Excellent Result for the Settlement Classes, and Consideration
           of the Risks of Continued Litigation, the Effectiveness of Proposed Distributions
           Methods, the Anticipated Application for Attorneys' Fees, and the Lack of any Side
           Agreement Favor Preliminary Approval. ......................................................... 17

           1.    The Complexity, Expense, and Duration of Litigation Through Trial and
                Appeal. ............................................................................................ 18

           2.    The Effectiveness of Proposed Distributions Methods and the Lack of an
                Agreement Required to Be Identified Under 23(e)(3). ........................................ 19

           3.    Class Counsel's Reasonable Fee Request Will Neither Impair nor Delay
                Relief to the Settlement Classes. ........................................................... 20

      C.    The Settlement Treats Settlement Class Members Equitably. .................................. 21

      D.    The Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval. ............. 21

VII.    THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT
      CLASSES. ............................................................................................................ 23

VIII.   THE NOTICE PROGRAM IS ADEQUATE AND FULFILLS ALL REQUIREMENT OF
      RULE 23 AND DUE PROCESS ............................................................................ 24

IX.     CONCLUSION ...................................................................................................... 26

i

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................................. 23

*Broockmann v. Bank of Greene Cnty.,*
    No. 122CV00390AMNATB, 2023 WL 7019273 (N.D.N.Y. Oct. 25, 2023) ......................... 21

*Buffington v. Progressive Advanced Insurance Co. et al.,*
    No. 20-cv-07408 (S.D.N.Y.) ............................................................................... 12, 22

*Christine Asia Co. v. Yun Ma,*
    No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................... 21, 26

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) .......................................................................... passim

*Clark v. City of New York,*
    No. 18 CIV. 2334 (AT), 2024 WL 1855668 (S.D.N.Y. Apr. 29, 2024) ............................ 16

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007) ................................................................................ 15

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ............................................................................ 17, 19

*Fleisher v. Phoenix Life Ins. Co.,*
    No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................ 18

*George v. Shamrock Saloon II, LLC,*
    2021 WL 3188314 (S.D.N.Y. July 28, 2021) ......................................................... 25

*Hicks v. Morgan Stanley & Co.,*
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................ 19

*In re AOL Time Warner, Inc.,*
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................ 22

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................... 18

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................. 17

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ............................................................. 18

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................. 21

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
  No. 20-CV-5917 (TAM), 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ................... 20

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020) ........................................................ 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................... 18, 22

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  18 Md. 2819, 2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ............................... 20

*In re Synchrony Fin. Sec. Litig.*,
  No. 3:18-CV-1818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023) ....... 14, 22, 26

*In re Tenaris S.A. Sec. Litig.*,
  No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ........... 18

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
  No. 517CV359LEKATB, 2023 WL 3251421 (N.D.N.Y. May 3, 2023) ................... 18

*Matheson v. T-Bone Rest., LLC*,
  No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ......................... 16

*Narcisse v. Progressive Casualty Insurance Company, et. al.,*
  No. 1:23-cv-04690-JGK (S.D.N.Y.) ...................................................... 12, 22

*Nichols v. Noom, Inc.*,
  No. 20-CV-3677 (KHP), 2022 WL 2705354 (S.D.N.Y. July 12, 2022) ................. 19

*Reyes v. Summit Health Mgmt., LLC*,
  No. 22-CV-9916 (VSB), 2024 WL 472841 (S.D.N.Y. Feb. 6, 2024) ..................... 14

*Selby v. Principal Mut. Life Ins. Co.*,
  No. 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003) .............. 22

*Soler v. Fresh Direct LLC,*
    20 Civ. 3431, 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ...................................... 14

*Stinson v. City of N.Y.,*
    256 F. Supp. 3d 283 (S.D.N.Y. 2017)........................................................................ 18

*Vargas v. Capital One Fin. Advisors,*
    559 F. App'x 22 (2d Cir. 2014) ................................................................................. 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)............................................................................... 14, 24

## Rules

Fed. R. Civ. P. 23(a) .................................................................................................... 23
Fed. R. Civ. P. 23(b)(3)................................................................................................ 23
Fed. R. Civ. P. 23(c)(2)(B)...................................................................................... 24, 25
Fed. R. Civ. P. 23(e)(1)................................................................................................ 13
Fed. R. Civ. P. 23(e)(2).......................................................................... 13, 14, 15, 22
Fed. R. Civ. P. 23(e)(2)(A).......................................................................................... 17
Fed. R. Civ. P. 23(e)(2)(B).......................................................................................... 17
Fed. R. Civ. P. 23(e)(2)(C).......................................................................................... 17
Fed. R. Civ. P. 23(e)(2)(C)(i)...................................................................................... 18
Fed. R. Civ. P. 23(e)(2)(C)(ii).............................................................................. 19, 20
Fed. R. Civ. P. 23(e)(2)(C)(iii).................................................................................... 20
Fed. R. Civ. P. 23(e)(2)(C)(iv).............................................................................. 19, 20
Fed. R. Civ. P. 23(e)(2)(D).......................................................................................... 21
Fed. R. Civ. P. 23(e)(3)...................................................................................... 17, 19, 20

## Statutes

N.Y. C.P.L.R. § 5004.................................................................................................... 10
N.Y. Gen. Bus. Law § 349......................................................................................... 4, 5
N.Y. Gen. Bus. Law § 349(a) ........................................................................................ 1

## Other Authorities

Herbert B. Newberg & William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §
    13:44 (6th ed. 2022)............................................................................................. 14, 23

## I.      INTRODUCTION

Plaintiffs John Plotts, Zachary Goodier, James England, Kevin Lukasik, Lorenzo Costa, Michael Verardo, and Lori Lippa ("Plaintiffs" or "Settlement Class Representatives") move unopposed for an order granting preliminary approval of the Class Action Settlement Agreement[1] (the "Settlement" or "Settlement Agreement") they have reached with Defendants Progressive Advanced Insurance Company, Progressive Specialty Insurance Company, Progressive Max Insurance Company, and Progressive Casualty Insurance Company (collectively "Progressive" or "Defendants"). Plaintiffs brought this action alleging Defendants breached their insurance contract—specifically the provision that actual cash value ("ACV") "is determined by the market value, age, and condition" of a vehicle at the time of loss—by applying Projected Sold Adjustments ("PSA"). Plaintiffs further allege that Progressive's use of the PSA was deceptive or misleading under N.Y. Gen. Bus. Law § 349(a) because Progressive misled Plaintiffs and similarly situated claimants by representing that the PSA reflects actual consumer purchasing behavior of negotiating discounts off of list price in cash transactions.

The proposed Settlement will resolve all claims against Defendants in exchange for a sizable cash payment of $48,000,000.00 (the "Settlement Fund") for the benefit of the Settlement Classes, less payment of attorney's fees, litigation expenses, settlement administration expenses, and service awards. This is an excellent result and represents a recovery of 70% of compensatory damages. There is no claims process. Instead, each Settlement Class Member who does not opt out will automatically receive a *pro rata* distribution tailored to the value of their loss vehicle and

---

[1] Capitalized terms that are otherwise undefined have the same meaning as in the Settlement Agreement.

calculated consistent with Plaintiffs' damages model in this action.

The Settlement was made possible only through years of hard-fought litigation against a Fortune 100 company and settled only on the eve of trial. Progressive mounted a vigorous defense at each step of this action, requiring Plaintiffs to (i) defeat Defendants' motion to dismiss, (ii) achieve contested class certification, which included consultation of reports and testimony from experts in the fields of the automotive industry, statistics, and appraisal profession, (iii) fend off Progressive's petition for interlocutory review of the class certification order, (iv) defeat Progressive's motion for summary judgment; (v) defeat Progressive's motions to exclude their expert witnesses, and (vi) engage in in significant pre-trial preparations and proceedings (including drafting and responding to motions in limine; submitting proposed voir dire questions, jury instructions, and a verdict form; preparing trial exhibit lists and objections to Defendants' exhibit list; and preparing witnesses to testify). With less than a month before the start of trial, the parties participated in extensive mediation efforts with well-respected mediators Mark Helm and Niki Mendoza of Phillips ADR Enterprises, P.C. Thus, by the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.

The proposed Notice Program is designed to provide individualized notice to each Settlement Class Member identified through discovery and data from Defendants' claim files. Notice will be provided by email, when available, and postal mail, when email is not available, and will notify each Settlement Class Member of their anticipated recovery amount. Every Class Member who does not opt-out of the Settlement will be issued payment. No funds from the Settlement will revert to Defendants. Class Counsel will request attorneys' fees not to exceed one-

third of the Settlement Fund and reimbursement of litigation expenses not to exceed $460,000. Plaintiffs and Class Counsel will also request each Settlement Class Representative be awarded a service award not to exceed $15,000. Settlement administrative costs are estimated not to exceed $236,000, which is less than 0.5% of the Settlement Fund.

Class Counsel believe that the Settlement is an excellent result for the Settlement Classes, and that the anticipated requests for attorneys' fees, litigation expenses, and costs are reasonable and in line with precedent in this district and the Second Circuit.

Moreover, certification of the Settlement Classes (which are the same as the classes previously certified except that the settlement class period extends through the date of preliminary approval) is appropriate for the reasons previously articulated by this Court in its prior orders. Similarly, the appointments of Plaintiffs as the Settlement Class Representatives and of Class Counsel as Class Counsel for the Settlement Classes are appropriate, and this Court should affirm these appointments for purposes of effectuating the Settlement.

In sum, the Settlement is fair, reasonable, and adequate, and Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement, including all exhibits; (2) provisionally certifying the Settlement Classes; (3) appointing Plaintiffs John Plotts, Zachary Goodier, James England, Kevin Lukasik, Lorenzo Costa, Michael Verardo, and Lori Lippa as Settlement Class Representatives; (4) appointing Carney Bates & Pulliam, PLLC, Jacobson Phillips PLLC, Normand PLLC, Edelsberg Law, P.A., Shamis & Gentile, P.A., and Bailey Glasser LLP as Class Counsel for the Settlement Classes; (5) approving Epiq Class Action and Claims Solutions, Inc. as Settlement Administrator; (6) approving the form and manner of Class Notice to the Settlement Classes; (7) approving the proposed schedule of events; and (8) scheduling a Final

Fairness Hearing.

## II.   PROCEDURAL BACKGROUND

Plaintiffs Dominick Volino[2] and John Plotts filed this action in July 2021, alleging that Progressive breached its uniform insurance policy and violated New York General Business Law § 349 by applying Projected Sold Adjustments. *See generally*, ECF No. 1. This action was consolidated with the related case *Verardo, et al. v. Progressive Cas. Ins. Co., et al.*, (ECF No. 108) and Plaintiffs filed a consolidated class action complaint, (ECF No. 111).

Progressive moved to dismiss this complaint.[3] As part of this motion, Progressive raised a potentially dispositive preemption defense: That Plaintiffs were preempted from challenging Progressive's use of Mitchell Reports because "the Superintendent [of Insurance] approved the use of the Mitchell Software under the regulatory framework established by New York Regulation 64." ECF No. 125 at 10. Following full briefing, the Court denied Progressive's motion. ECF No. 152.

The parties then fully briefed (1) Plaintiffs' motion for class certification, which the Court granted, and (2) Progressive's motions to exclude Plaintiffs' experts, which the Court denied. ECF No. 208. Following certification, Progressive petitioned the Second Circuit for an interlocutory review of this Court's certification order pursuant to Rule 23(f). Plaintiffs opposed the petition, and the Second Circuit denied it. ECF No. 234.

Following the Second Circuit's denial of Progressive's petition, Progressive filed a motion for summary judgment on all Plaintiffs' claims. ECF No. 243. The Court granted Progressive's

---

[2] Plaintiff Volino dismissed his claims prior to Class Certification.
[3] Progressive previously had moved to dismiss the Amended Complaint and Second Amended Complaint, but those were denied as moot when each was superseded by an amended pleading.

motion pertaining to Plaintiffs' theory that application of PSAs violated Regulation 64, but otherwise denied Progressive's motion and set the case for trial on Plaintiffs' claims for breach of contract and violations of GBL § 349. ECF Nos. 298 & 299.

The parties mediated this case on June 11, 2024. By that time, the parties had completed nearly all pre-trial filings, including briefing all evidentiary motions and submitting their proposed voir dire questions, jury instructions, verdict forms, witness lists, and exhibit lists. Thus, this case was ready for trial at the time the parties engaged in mediation.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A. The Settlement Classes Extend the Previously Certified Litigation Classes Through the Date of Preliminary Approval.

The Settlement defines the Settlement Classes as:

**Breach of Contract Class**: All persons who made a first-party claim on a policy of insurance issued by any Progressive Group entity to a New York resident who, from July 28, 2015 through the date of Preliminary Approval, received compensation from one of the Defendants for the total loss of a covered vehicle, where that compensation was based on an Instant Report prepared by Mitchell International, Inc. and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

**GBL Class**: All persons who made a claim on a policy of insurance issued by any Progressive Group entity to a New York resident who, from July 28, 2018, through the date of Preliminary Approval, received compensation from one of the Defendants for the total loss of a covered vehicle, where that compensation was based on an Instant Report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

Ex. 1 (Settlement Agreement) at ¶¶ 1.c.–d.[4] Previously, on March 16, 2023, this Court entered an order (ECF No. 208) certifying two litigation classes: a Breach of Contract Class and a GBL Class,

---

4 All exhibits cited herein are to the contemporaneously filed Declaration of Hank Bates ("Bates Decl.").

each of which ran through the date the order granting class certification was entered. ECF No. 208 at p. 2. The only substantive change between the previously certified litigation classes and the Settlement Classes is that the Settlement Classes run to and through the date of the order granting Preliminary Approval.[5] In addition, to simplify and streamline the Notice Program and the Plan of Allocation the subclasses specific to each Progressive entity have been eliminated. *Compare* Settlement Agreement at ¶¶ 1.c.–d. *with* ECF No. 208.

### B.  The Settlement Benefits: $48,000,000 Common Fund with No Reverter.

Under the proposed Settlement, within fifteen business days after Preliminary Approval, Defendants will establish a cash Settlement Fund of $48,000,000.00 for the benefit of Settlement Class Members, with no reverter to Defendants. Settlement Agreement at ¶¶ 7 & 10.b. This amount represents approximately 70% of the compensatory damages alleged by Plaintiffs under the damages model they were prepared to present at trial, or roughly 54% of damages plus pre-judgment interest. Bates Decl., at ¶ 21.  There is no claims process. Instead, each Settlement Class Member who does not opt out will automatically receive a *pro rata* distribution tailored to the value of their loss vehicle and calculated consistent with Plaintiffs' damages model in this action.

The Settlement Agreement provides Class Counsel with the full authority to propose, for Court approval, both the notice plan and plan of allocating the cash fund among the Settlement Class Members. Settlement Agreement ¶ 10.b. Class Counsel's proposals are set forth below and in the Declaration of Hank Bates filed herewith.

---

[5] The Settlement Classes do not include the 9 individuals who previously opted out of this Action, in response to the notice of class certification.  *See* ECF No. 293.

### C.  The Notice Program.

As set forth in the Declaration of Cameron Azari[6] and in paragraphs 27–34 of the Bates Declaration, Class Counsel propose that notice to Settlement Class Members be made by (1) emailing the Email Notice (substantially in the form attached as Exhibit 2 to the Bates Declaration) to those Settlement Class Members for whom an email address is available in Defendants' records, and (2) mailing the Mail Notice (substantially in the form attached as Exhibit 3 to the Bates Declaration) by first-class US mail to those Settlement Class Members for whom an email address is not available in Defendants' records. Skip tracing will be performed by the Settlement Administrator for all returned Mail Notices. To the extent it is reasonably able to locate a more current mailing address using skip tracing, the Settlement Administrator will re-mail the returned Mail Notice to the particular Settlement Class Member by first-class US mail.

The Email Notice and Mail Notice will include a tailored estimate of the individual recovery amount that each Settlement Class Member is anticipated to receive and instructions for submitting a change of address. Additionally, the Mail Notice will inform Settlement Class Members that, if they want to redeem their recovery through an electronic payment option, they need to visit the Settlement Website and follow the instructions for providing an email address to the Settlement Administrator. The Email Notice and Mail Notice will also include the following information: (1) a description of the class action and the proposed Settlement, (2) the rights of Settlement Class Members to request exclusion from the Settlement Classes or to object to the Settlement and instructions about how to exercise those rights, (3) specifics on the date, time and

---

6 Filed contemporaneously with this motion.

place of the Final Fairness Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representatives' service awards.

Both the Email Notice and the Mail Notice will include a link to the Settlement Website, www.NYTotalLoss.com, which will include the following information: (1) a more detailed summary of the Settlement terms in the form attached as Exhibit 4 to the Bates Declaration ("Long Form Notice"); (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) the Settlement Agreement, motions for approval and for attorneys' fees, and all other important documents in the case; (4) important case dates and deadlines, including the deadlines to opt out and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Fairness Hearing. Bates Decl. at ¶ 32. The Notice Program will also establish a toll-free telephone line with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week. *Id.* at ¶ 33.

The Parties have agreed, subject to Court approval, that Epiq Class Action and Claims Solutions, Inc. ("Epiq") will serve as Settlement Administrator. Settlement Agreement at ¶ 1.w.; Bates Decl. at ¶ 27. Epiq has ample experience in class action administration and was previously appointed by this Court as administrator of the court-approved notice program implemented in accord with this Court's Class Certification Order. *See*, Declaration of Cameron Azari; *see also* ECF No. 227.

### D.  Plan of Allocation.

Class Counsel proposes that, unless a Settlement Class Member submits a valid and timely Request for Exclusion, he or she automatically be issued a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees, litigation expenses, service awards, and all costs

of notice and settlement administration (the "Distributable Settlement Amount"). Bates Decl. at ¶¶ 35–43. After payment of requested attorneys' fees, litigation expenses, settlement administration expenses, and service awards, the Distributable Settlement Amount is estimated to be approximately $31,300,000, yielding individual payments to the approximately 93,000 Settlement Class Members of approximately $335 on average.[7] *See* Declaration of Hank Bates at ¶ 36.

Class Counsel proposes that Settlement Class Members' distributions be made under the following procedure, which tracks the damages model set forth in prior pleadings and that Class Counsel was prepared to present at trial. Under this procedure, each Settlement Class Member will be treated equitably, as each will receive the same pro rata percentage of their potential damages claim in this Action.

***First***, Class Counsel and their experts have determined from a review of the sample claim files in this Action and related actions involving Progressive entities that, on average, application of PSAs caused the Baseline Valuations of ACV in WCTL Instant Reports to be lowered by 6.5%. This is the "PSA Impact percentage." To calculate the potential compensatory damages for each Settlement Class Member's claim, the PSA Impact percentage will be multiplied by (a) the WCTL Baseline Valuation of ACV, (b) the Total Tax Settlement Amount, and (c) the Condition Adjustment documented in Progressive's claims data for their insurance claim.[8] To the sum of (a)–

---

[7] It is currently estimated that the Settlement Classes include approximately 93,000 members, based on claims data produced by Defendants through May 17, 2024. *See* Bates Decl. at 36 n.6. The final size of the Settlement Classes will be ascertained once the updated Settlement Class data through the date of preliminary approval is obtained from Defendants in accord with the Settlement Agreement. *Id*.

8 Each of these amounts (WCTL Baseline Valuation, Total Tax Settlement Amount, and Condition

(c) is added prejudgment interest at a rate of 9%[9] simple per annum from the date of valuation to arrive at each Settlement Class Member's Damages. ECF No. 174-5 at 23–25 & ECF No. 198-1 at Mitchell-Volino Subpoena 001701 (describing relationship of condition adjustment to base value).

**Second**, Class Counsel will calculate the sum of all Settlement Class Members' Damages, which will be the Aggregate Damages. Bates Decl. ¶ 39. **Third**, Class Counsel will divide the Distributable Settlement Amount by the Aggregate Damages to calculate the Pro Rata Ratio. *Id.* at ¶ 40. **Fourth**, the pro rata distribution to be paid to each Settlement Class Member will be calculated by multiplying the Pro Rata Ratio by each Settlement Class Member's Damages. *Id.* at ¶ 41.

### E.  Distribution of Payments to the Class.

Payments of each Settlement Class Members' pro rata portion of the Distributable Settlement Amount will be made within 90 days after the Final Judgment. Settlement Class Members for whom the Settlement Administrator does not have an email address will automatically be issued checks. Within 45 days after Final Judgment, each Settlement Class Member for whom the Settlement Administrator has an email address will be emailed a link they can follow to choose whether to receive their recovery electronically—through, e.g., Venmo, PayPal, or ACH transfer—or by check.[10] This link will remain active for 30 days. At the end of that period, any Settlement Class Member who did not elect to receive their recovery via an

---

Adjustment) are maintained by Progressive in its records. ECF No. 174-6 at 16. This formulation tracks the damages calculations explained by plaintiffs' statistical expert Dr. Michelle Lacey in her expert reports. ECF No. 174-5 at 23–25.

9 N.Y. C.P.L.R. § 5004.

[10] This process is designed to encourage a higher rate of electronic payments, which cost less than issuing physical checks and will result in higher payouts.

electronic payment option will be issued a check. To be clear, every Settlement Class Member will receive a recovery unless they submit a valid exclusion.

Checks that are not cashed within 90 days of issuance will be redistributed on a pro rata[11] basis to all Settlement Class Members who either cashed their initial checks or received electronic payments during the initial distribution. The Settlement Administrator will continue to make distributions to Settlement Class Members who either received their distribution electronically or who cashed the check sent in the prior distribution until Settlement Class Members receiving further distribution by check would receive less than $5.00 or a further distribution would otherwise not be feasible. Once either event occurs, the remaining funds will be distributed on a pro rata basis to Settlement Class Members who received their payments electronically, thus depleting the Settlement Fund and ensuring all Settlement Funds directly benefit Settlement Class Members. No funds from the Settlement will revert to Defendants. Settlement Agreement at ¶ 10.b.

### F.  Release.

In exchange for the consideration from the Defendants, the Action will be dismissed with prejudice upon Final Approval of the Settlement, and the Settlement Class Members will thereby release all claims against Defendants and the Released Parties through the date that the Court enters the Final Judgment, relating to Progressive's settlement of a total-loss property claim. *See* Settlement Agreement at ¶¶ 12–13. Released Claims do not include (1) any claims for personal injury, medical payment, uninsured motorist or underinsured motorist, (2) the claims and rights of

---

[11] To determine the pro rata distribution in each subsequent distribution, the Settlement Administrator will, after first deducting any necessary settlement-administration expenses from such uncashed-check funds, re-run the calculations used in the initial distribution, using the modified Distributable Settlement Amount for only those Settlement Class Members who will receive the distribution.

any party in the settlement agreed to in *Buffington v. Progressive Advanced Insurance Co. et al.*, No. 20-cv-07408 (S.D.N.Y.), or (3) the claims being litigated in *Narcisse v. Progressive Casualty Insurance Company, et. al.,* No. 1:23-cv-04690-JGK (S.D.N.Y.). *See id.* at ¶ 12.

### G. Applications for (i) Attorneys' Fees and Litigation Expenses, and (ii) Class Representatives' Service Awards.

The Settlement Agreement provides that, consistent with the common fund doctrine, Class Counsel may file a motion with the Court requesting an award of attorneys' fees and out-of-pocket litigation expenses to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Settlement Agreement at ¶ 11. Class Counsel's requests for attorneys' fees will not exceed one-third of the Settlement Fund, and their request for litigation expenses will not exceed $460,000. The enforceability of the Settlement Agreement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees or litigation expenses.

The Settlement Agreement further provides that Plaintiffs may request a service award for each Settlement Class Representative. *Id.*  Plaintiffs' requests will not exceed $15,000 per Settlement Class Representative or $105,000 collectively. Bates Decl. at ¶ 47. These service awards, which amount in the aggregate to approximately 0.22% of the Settlement Fund, will be paid out of the Settlement Fund and will compensate Plaintiffs for their time and effort serving as the Settlement Class Representatives through almost three years of litigation and up to the eve of trial. *Id.*

## IV.   PROPOSED SCHEDULE OF EVENTS

Consistent with the provisions of the Settlement Agreement, Plaintiffs respectfully propose

the following schedule for the various Settlement events:

| Event | Date |
|---|---|
| Deadline for Defendants to get updated Settlement Class List to Epiq | 15 calendar days following entry of Preliminary Approval |
| Deadline for Settlement Website and IVR to go live | 30 calendar days following entry of Preliminary Approval |
| Deadline to commence Notice Program ("Settlement Notice Date") | 45 calendar days following entry of Preliminary Approval |
| Deadline for applications for final approval, attorneys' fees and expenses and service awards | 30 calendar days following Settlement Notice Date |
| Deadline for opt outs and objections to be postmarked | 45 calendar days following Settlement Notice Date |
| Deadline for Parties to file papers in response to any timely and valid objections | 14 calendar days prior to Final Fairness Hearing |
| Final Fairness Hearing | At least 118 calendar days after entry of Preliminary Approval |

## V.    APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*. Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

13

Fed. R. Civ. P. 23(e)(2).

"In deciding whether the compromise is fair, reasonable, and adequate, the court must consider both the substantive terms of the settlement and whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (internal quotations omitted and cleaned up). In performing this analysis, courts in this Circuit supplement the Rule 23(e)(2) factors with the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See Soler v. Fresh Direct LLC*, 20 Civ. 3431, 2023 WL 2492977, at *2 n.3 (S.D.N.Y. Mar. 14, 2023) ("The advisory committee notes ... indicate that the ... Rule 23 factors were not intended to displace the *Grinnell* factors, but to focus courts on the core concerns of procedure and substance." (internal quotation marks omitted)). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Finally, courts in this Circuit recognize a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Reyes v. Summit Health Mgmt., LLC*, No. 22-CV-9916 (VSB), 2024 WL 472841, at *1 (S.D.N.Y. Feb. 6, 2024) (same); *see also* Herbert B. Newberg & William B.

Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:44 (6th ed. 2022) (hereinafter "Newberg") ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

## VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.  The Settlement Is Procedurally Fair.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Grinnell*, 495 F.2d at 463 (overlapping with the third *Grinnell* factor, *i.e.* the stage of the proceedings and the amount of discovery completed). In assessing adequacy of representation, courts focus on whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Plaintiffs' interests are aligned with the interests of Settlement Class Members as all suffered the same alleged harms as a result of Progressive applying PSAs as part of its method of calculating the ACV of total loss vehicles. Plaintiffs and Settlement Class Members also share the same interests in securing relief for these injuries, which Plaintiffs have vigorously pursued throughout this litigation. Moreover, there are no conflicts between Plaintiffs and the members of the Settlement Classes. Indeed, as previously determined in this Court's Class Certification Order, "[t]he named Plaintiffs thus share the interest of any potential absent class members who might similarly have multiple complaints about Progressive, and have no 'interests antagonistic to the interests of other class members.'" ECF No. 208 at p. 13.

15

Similarly, it has already been shown in this litigation that Class Counsel are highly qualified, have extensive experience and knowledge in prosecuting similar consumer class actions, and have dedicated significant time and personnel to this litigation. ECF No. 208 at p. 23-24 (appointing CBP as Class Counsel); ECF No. 223 (appointing Normand PLLC, Edelsberg Law, P.A., and Shamis & Gentile Class Counsel along with CBP); ECF No. 356 (appointing Bailey Glasser as Class Counsel). Moreover, as demonstrated by the record in this action, Plaintiffs and Class Counsel performed significant work in identifying and litigating the claims of Plaintiffs and the Settlement Class Members prior to entering the Settlement, including: engaging in extensive factual investigation; drafting the initial and amended complaints; completing both fact and expert discovery and reviewing voluminous discovery materials; engaging in substantial motions practice (including Defendants' motion to dismiss, Plaintiffs' motion for class certification, competing motions for summary judgment, and various motions in limine); conducting pre-trial preparations and engaging in pre-trial proceedings; and participating in a full-day mediation. *See* Bates Decl. at ¶¶ 3–14. Indeed, effective settlement negotiations between the Parties only began on the eve of trial, which was scheduled to begin on July 8, 2024, after three years of hard-fought litigation. *Id.* at __. The adversarial posture and thoroughness of the proceedings, the substantial discovery taken, and the adequacy of representation all favor preliminary approval here. *See, e.g., Clark v. City of New York*, No. 18 CIV. 2334 (AT), 2024 WL 1855668, at *1 (S.D.N.Y. Apr. 29, 2024); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims" and "[t]he parties' participation in a day-long mediation allowed them to further explore the claims and defenses").

In sum, Plaintiffs' interests are aligned with the interests of Settlement Class Members. Class Counsel had the ability to, and did, thoroughly and effectively represent the interests of the Settlement Classes throughout the adversarial litigation and the mediation process. As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is thus procedurally fair. *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (settlement was procedurally fair where negotiations were overseen by a neutral mediator and parties engaged in "extensive and contested" discovery beforehand); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (recognizing mediator's involvement in "settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

**B. The Settlement Is an Excellent Result for the Settlement Classes, and Consideration of the Risks of Continued Litigation, the Effectiveness of Proposed Distributions Methods, the Anticipated Application for Attorneys' Fees, and the Lack of any Side Agreement Favor Preliminary Approval.**

Next, the Court must assess the Settlement's substantive fairness. Rule 23(e)(2)(C) enumerates four factors to be considered when assessing whether the relief provided to the Settlement Class is adequate: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." *See also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors one, four through six, eight, and nine).

Recovering 70% of compensatory damages is an excellent result in any case in any context. It is particularly impressive in the class action context which adds significant procedural and legal complexity and risk at the pre-trial, trial and appellate stages.

17

### 1. The Complexity, Expense, and Duration of Litigation Through Trial and Appeal.

Rule 23(e)(2)(C)(i) first requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Grinnell* factors one ("complexity, expense, and likely duration of the litigation") and four, five, and six (risks of establishing liability and damages and maintaining the class). *See Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV359LEKATB, 2023 WL 3251421, at *4 (N.D.N.Y. May 3, 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). The Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *8 (S.D.N.Y. Sept. 9, 2015) (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id*. Courts recognize that "the complexity of Plaintiff's claims ipso facto creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009).

Continued litigation of this action would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also, e.g.*, *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 289 (S.D.N.Y. 2017) (same); *Morris*, 859 F. Supp. 2d at 619. Litigation inherently involves risks and uncertainty, which is especially true where, as here, proof of liability and damages hinge on a battle between expert witnesses. *See In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632, at *8 (E.D.N.Y. Apr. 22, 2024) (recognizing expert discovery can "substantially increase costs to the settlement class and result in a costly 'battle of the experts' at trial"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche*

*Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

In addition to a battle of the experts, Plaintiffs face the risk of maintaining class certification through trial and appeal. *Nichols v. Noom, Inc.*, No. 20-CV-3677 (KHP), 2022 WL 2705354, at *9 (S.D.N.Y. July 12, 2022) (stating the risk attendant to defending any decertification motion supported approval of the settlement). Defendants have already demonstrated their willingness to seek the Second Circuit's intervention, filing a petition for permission to appeal the Court's Class Certification Order pursuant to Rule 23(f). Bates Decl. at ¶¶ 3–13. Thus, the risk of a motion for decertification, coupled by a likely appeal by Defendants of any judgment favorable to Plaintiffs, promised further expense and delay.

Though Plaintiffs believe in the merits of their case, by reaching a favorable settlement with the assistance of neutral mediators, Plaintiffs avoided significant expense and delay and the risks of trial and appeal and secured immediate benefits for the Settlement Classes. Consideration of these factors sharply weigh in favor of preliminary approval. *See Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

### 2. The Effectiveness of Proposed Distributions Methods and the Lack of an Agreement Required to Be Identified Under 23(e)(3).

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule 23(e)(3).

Here, there is no claims process. Thus, unless a Settlement Class Member opts out of the

Settlement, he or she will automatically receive a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees, litigation expenses, service awards, and all costs of notice and settlement administration. The Settlement Fund of $48,000,000.00 represents approximately 70% of the compensatory damages alleged by Plaintiffs. This means that after payment of attorneys' fees, litigation expenses, settlement administration expenses, and service awards, the Distributable Settlement Amount will be approximately $31,300,0000, which in turn will yield individual payments to Settlement Class Members of, on average, approximately $335. *See* Bates Decl. at ¶ 36. No funds from the Settlement will revert to Defendants. Settlement Agreement at ¶ 10.b. Additionally, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3). Accordingly, consideration of Rule 23(e)(2)(C)(ii) and (iv) weigh in favor of preliminary approval.

### 3. Class Counsel's Reasonable Fee Request Will Neither Impair nor Delay Relief to the Settlement Classes.

Under Rule 23(e)(2)(C)(iii), this Court is also to consider the "terms of any proposed award of attorney's fees, including timing of payment." As discussed above and disclosed in the Class Notice (*see* Bates Decl. at Exs. 2–4), the Settlement permits Class Counsel to apply for a percentage of the common fund fee award. Class Counsel's request will not exceed one third of the common fund which is reasonable in light of the work performed and the results obtained (*See* Bates Decl. at ¶ 46) and consistent with precedent in this district and the Second Circuit. *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 18 Md. 2819, 2020 WL 6193857, at *5-6 (E.D.N.Y. Oct. 7, 2020); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *15 (E.D.N.Y. Jan. 26, 2024). Class Counsel will not receive any funds until the Court has entered an order addressing their fee request. Because the Settlement

Agreement provides only the opportunity to seek a reasonable attorneys' fee without any effect on the relief to Plaintiffs and the Settlement Classes, this factor favors approval.

### C.  The Settlement Treats Settlement Class Members Equitably.

Finally, the Settlement treats members of the Settlement Classes equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). As detailed above, each Settlement Class Member is entitled to automatically receive a *pro rata* distribution, which tracks the damages model in this action and is tailored to the value of their loss vehicle and their potential damages, unless they chose to opt out of the Settlement. Thus, there is no preferential treatment for any Settlement Class Members and the proposed Plan of Allocation treats members equitably relative to one another. *See Broockmann v. Bank of Greene Cnty.*, No. 122CV00390AMNATB, 2023 WL 7019273, at *11 (N.D.N.Y. Oct. 25, 2023) (finding that the requirement that class members be treated equitably relative to each other was satisfied where each class member was to receive a "pro rata share" of the net settlement fund or forgiveness of certain uncollected fees); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (finding the settlement satisfied Rule 23(e)(2)(D) because under the proposed plan of allocation, "Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss.").

### D.  The Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval.

Under the seventh *Grinnell* factor, a court also considers "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. Courts do not require that a defendant "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (internal citation omitted). Rather, where, as here, "the other *Grinnell*

factors weigh heavily in favor of settlement," a court "need not determine whether Defendants could have withstood a larger judgment, and may still approve the settlement agreement." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *9 (D. Conn. Aug. 4, 2023) (finding the seventh Grinnell factor "weighs in favor of approval."); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair."). Moreover, this is an excellent result, with the Settlement Fund represents a recovery of 70% of the compensatory damages related to the pending claims. Thus, this *Grinnell* factor favors preliminary approval.

Lastly, while not an official *Grinnell* factor, courts may also look to the scope of the release. *See Payment Card*, 330 F.R.D. at 42 n.41. Here, the scope of the release is not overly broad as Settlement Class Members will release only those property claims relating to Progressive's settlement of a Settlement Class Members' total-loss claim. *See* Settlement Agreement at ¶¶ 12–13. Released Claims do not include (i) any claims for personal injury, medical payment, uninsured motorist or underinsured motorist, (ii) the claims and rights of any party in the settlement agreed to in *Buffington v. Progressive Advanced Insurance Co. et al.*, No. 20-cv-07408 (S.D.N.Y.), and (iii) the claims being litigated in *Narcisse v. Progressive Casualty Insurance Company, et. al.,* No. 1:23-cv-04690-JGK (S.D.N.Y.). *See id.* Thus, the release is narrowly tailored and appropriate. *See Selby v. Principal Mut. Life Ins. Co.,* No. 98 CIV. 5283(RLC), 2003 WL 22772330, at *3 (S.D.N.Y. Nov. 21, 2003) (finding narrow release of class claims that allowed class members who believe they may have been injured by the alleged practice to pursue claims for monetary relief through individual or class suits weighed in favor or preliminary approval).

In sum, the applicable factors under Rule 23(e)(2) and *Grinnell* strongly support approval.

22

This Court should therefore find that it is likely to approve the Settlement.

## VII.  THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES.

Plaintiffs respectfully request that the Court conditionally certify the Settlement Classes for purposes of effectuating the Settlement. As discussed above, on March 16, 2023, this Court entered an order (ECF No. 208) certifying two litigation classes: a Breach of Contract Class and a GBL Class, each of which ran through the date an order granting class certification was entered. ECF No. 208 at p. 2. The only substantive changes between the previously certified litigation classes and the Settlement Classes are that the Settlement Classes run to and through the date of Preliminary Approval and that the subclasses are being dropped. *Compare* Settlement Agreement at ¶¶ 1.c.–d. *with* ECF No. 208. Thus, for the same reasons previously determined by this Court in its Class Certification Order, the proposed Settlement Classes satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and the Rule 23(b)(3) of predominance and superiority:

- "The criteria for class membership -- whether a person submitted a claim, based on a policy issued by a Defendant to a New York resident, during a certain period, where the payment was based on a Mitchell Report, which included a PSA -- are 'objective criteria that establish a membership with definite boundaries.'" (ECF No. 208 at p. 11);
- "Both classes . . . are so numerous that joinder of all members is impracticable." (*see id*.);
- "[T]he named Plaintiffs' claims, and Progressive's related defenses, are typical of the class as a whole." (*see id*. at p. 12);
- "[T]he representative parties will fairly and adequately protect the interests of the class." (*see id*. at p. 13);
- "[T]he critical common questions identified by Plaintiffs predominate over those individual inquiries." (*see id*. at p. 15); and
- "To the extent Progressive's predominance arguments overlap with the superiority requirements, those arguments are unavailing for the reasons above." (*see id*. at p. 22).

*See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Newberg, *supra*, § 13:18.

Thus, the Rule 23(a) and (b) requirements are met for settlement purposes, and Defendants consent

23

to provisional certification of the Settlement Classes to effectuate the Settlement.

Additionally, and for the reasons previously espoused by this Court, this Court should (i) appoint Plaintiffs John Plotts, Zachary Goodier, James England, Kevin Lukasik, Lorenzo Costa, Michael Verardo, and Lori Lippa as Representatives of the Settlement Classes (*see* ECF No. 208), and (ii) appoint Carney Bates & Pulliam, PLLC, Jacobson Phillips PLLC, Normand PLLC, Edelsberg Law, P.A., Shamis & Gentile, P.A., and Bailey Glasser LLP as Class Counsel (*see* ECF No. 208 at p. 23-24 (appointing CBP as Class Counsel); ECF No. 223 (appointing Normand PLLC, Edelsberg Law, P.A., and Shamis & Gentile Class Counsel along with CBP); ECF No. 356 (appointing Bailey Glasser as Class Counsel)).

## VIII.   THE NOTICE PROGRAM IS ADEQUATE AND FULFILLS ALL REQUIREMENT OF RULE 23 AND DUE PROCESS

"When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (summary order) (citing Fed. R. Civ. P. 23(c)(2)(B), (e)(1)). The notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Visa*, 396 F.3d at 114.  "Class notice need only describe the terms of the

settlement generally, which is a minimal requirement." *George v. Shamrock Saloon II, LLC*, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021).

Here, the Class Notice meets all the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Classes and the estimated amount of recovery for each Settlement Class Member; the rights of Settlement Class Members to participate in the Settlement, to request exclusion from the Settlement Classes or to object to the Settlement, and specifics on the dates for exercising these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Fairness Hearing; and the time and place of the Final Fairness Hearing. Thus, the Class Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Class Notice also contains information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and litigation expenses, and service awards for the Settlement Class Representatives.

Moreover, the proposed Settlement requires Plaintiffs to notify Settlement Class Members of the proposed Settlement by (1) emailing the Class Notice to those Settlement Class Members for whom an email address is available in Defendants' records and was made available as part of the Class Data, and (2) mailing, by first-class US mail, the Class Notice to those Settlement Class Members for whom an email address is not available in Defendants' records. Thus, Settlement Class Members have been identified from Defendants' internal records and shall receive individual notice.

In addition to the emailed and mailed Class Notices, a Settlement Website will be established, which will provide access to the Class Notice, as well as other key documents related

to the Settlement, including the Settlement Agreement, the Court's Preliminary Approval Order, and Class Counsel's application for attorneys' fees, litigation expenses, and service awards. Furthermore, Settlement Class Members are not required to submit claim forms in conjunction with the Settlement. Thus, every Settlement Class Member who does not exercise the right of exclusion will automatically receive a payment in accord with the terms of the Settlement.

Accordingly, the form and manner of notice proposed here fulfills all of the requirements of Rule 23 and due process. *See In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023) (finding notice program that included direct notice and publication notice "satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provided the best notice practicable under the circumstances."); *see also Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (finding "the combination of Notice Packets sent individually by first-class mail and/or e-mail to those Class Members who could be identified with reasonable effort, combined with the print and Internet-based publication of Settlement documents was the best notice ... practicable under the circumstances.'").

## IX.   CONCLUSION

For these reasons, Plaintiffs respectfully request the Court enter an order: (1) preliminarily approving the Settlement, (2) provisionally certifying the Settlement Classes, (3) appointing Plaintiffs John Plotts, Zachary Goodier, James England, Kevin Lukasik, Lorenzo Costa, Michael Verardo, and Lori Lippa as Settlement Class Representatives, (4) appointing Carney Bates & Pulliam, PLLC, Jacobson Phillips PLLC, Normand PLLC, Edelsberg Law, P.A., Shamis & Gentile, and Bailey Glasser LLP as Class Counsel for the Settlement Classes, (5) approving Epiq

Class Action and Claims Solutions, Inc. as Settlement Administrator, (6) approving the form and

manner of Class Notice to the Settlement Classes, (7) approving the proposed schedule of events,

and (8) scheduling a Final Fairness Hearing. A proposed order granting this relief is attached as

Exhibit 7 to the Bates Declaration and will be submitted in Word format to chambers via email.

Dated: July 1, 2024                     Respectfully submitted,

                                        /s/ Hank Bates
                                        Hank Bates (admitted *pro hac vice*)
                                        Tiffany Oldham (admitted *pro hac vice*)
                                        Lee Lowther (admitted *pro hac vice*)
                                        **CARNEY BATES & PULLIAM, PLLC**
                                        One Allied Drive, Suite 1400
                                        Little Rock, Arkansas 72202
                                        Telephone: (501) 312-8500
                                        Email: hbates@cbplaw.com
                                        Email: toldham@cbplaw.com
                                        Email: llowther@cbplaw.com

                                        Andrew J. Shamis (NY #5195185)
                                        Edwin Eliu Elliott (admitted *pro hac vice*)
                                        **SHAMIS & GENTILE, P.A.**
                                        14 NE First Avenue, Suite 705
                                        Miami, Florida 33132
                                        Telephone: (305) 479-2299
                                        Email: ashamis@shamisgentile.com
                                        Email: edwine@shamisgentile.com

                                        Scott Edelsberg (admitted *pro hac vice*)
                                        **EDELSBERG LAW, PA**
                                        20900 NE 30th Avenue, Suite 417
                                        Aventura, Florida 33180
                                        Telephone: (305) 975-3320
                                        Email: scott@edelsberglaw.com

                                        Edmund A. Normand (admitted *pro hac vice*)
                                        **NORMAND PLLC**
                                        3165 McCrory Place, Suite 175
                                        Orlando, Florida 32803
                                        Telephone: (407) 603-6031
                                        Email: ed@normandpllc.com

27

Jacob L. Phillips (admitted *pro hac vice*)
**JACOBSON PHILLIPS PLLC**
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, Florida 32701
Telephone: (407) 720-4057
Email: jacob@jacobsonphillips.com

Thomas M. Mullaney (TM-4274)
**THE LAW OFFICE OF THOMAS M.
MULLANEY**
530 Fifth Avenue, 23rd Floor
New York, New York 10036
Telephone: 212-223-0800
Email: tmm@mullaw.org

Brian A. Glasser (admitted *pro hac vice*)
James L. Kauffman (admitted *pro hac vice*)
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Email: bglasser@baileyglasser.com
Email: jkauffman@baileyglasser.com

Patricia M. Kipnis (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
923 Haddonfield Rd. Suite 307
Cherry Hill, NJ 08002
Telephone: (304) 340-2282
Email: pkipnis@baileyglasser.com

Jonathan Marshall (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Email: jmarshall@baileyglasser.com

*Counsel for Plaintiffs and the Class*

28

## CERTIFICATE OF SERVICE

I certify that on July 1, 2024, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide electronic mail notice to all counsel of record.

*/s/ Hank Bates*
Hank Bates