UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
DOMINICK VOLINO, et al.,                                      :
                           Plaintiffs,     :
                                                              :    21 Civ. 6243 (LGS)
                  -against-                          :
                                                              :    **ORDER**
PROGRESSIVE CASUALTY INSURANCE                                :
COMPANY, et al.,                                              :
                          Defendants.    :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

WHEREAS, a final approval hearing regarding the class action settlement was held on March 5, 2025.

WHEREAS, the Order dated March 7, 2025, provided final approval of the class action settlement.

WHEREAS, Class Counsel has moved for an award of $16,000,000 in attorneys' fees, $342,766.26 in litigation expenses and $10,000 in service awards for each of the seven representative Plaintiffs.

WHEREAS, the Court has reviewed and considered the Settlement Agreement, all papers filed and proceedings held in connection with the Settlement, all oral and written comments received regarding the Settlement, the record in this action, Class Counsel's arguments, Plaintiffs' petition for attorneys' fees, expenses and service awards (the "Petition") and the supporting memoranda of law, declarations and exhibits, and expert declaration submitted.

**Attorneys' Fees and Litigation Expenses**

WHEREAS, pursuant to Federal Rule of Civil Procedure 23(h), Plaintiffs' petition for attorneys' fees is granted in part in the amount of $13,440,000, as an amount that is fair and reasonable based on the factors set forth in *Goldberger v. Integrated Res., Inc.*, "(1) the time and

labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d 43, 50 (2d Cir. 2000);[1] *see also Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023). "[T]he relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Moses*, 79 F.4th at 244 (quoting Fed. R. Civ. P. 23(e)(3) advisory committee's note to 2018 amendment).

WHEREAS, using the approach from *In re Colgate-Palmolive Co. ERISA Litig.*, the first step is to establish a baseline or benchmark fee amount on which to apply the *Goldberger* factors. 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014). The benchmark is based on the median amount of fees awarded in similar settlements. *Id.* Using evidence of attorneys' fees in (1) consumer class actions and (2) cases with similarly sized settlement amounts takes into account the factors of magnitude and complexity of the case and the size of the fee in relation to the settlement. *Id.* This empirical data reflects a sliding scale such that the fee percentage decreases as the amount of the settlement increases and therefore avoids a windfall to class counsel. *Id. Cf. Goldberger*, 209 F.3d at 51-52 (criticizing the use of a fixed percentage fee benchmark for all cases and noting that "it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case").

WHEREAS, the most recently available empirical evidence indicates that for settlements in 2006 and 2007 (i) for consumer class actions of any size, the median fee percentage was 24.6% and (ii) for all types of class actions in the $30-72.5 million decile, the median fee percentage was 24.9%, with a standard deviation of 8.4%. Brian T. Fitzpatrick, *An Empirical*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alternations, emphases, footnotes and citations are omitted.

*Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 834-35, 839 (2010).  For settlements from 2009 to 2013 (i) for consumer class actions of any size, the median fee percentage was 25% and (ii) for all types of class actions in the $23.5-$67.5 million range, the median fee percentage was slightly higher than 24%.  Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 948, 952 (2017).  Based on this data, the benchmark fee percentage for consumer class action settlements of comparable size is approximately 25%.

WHEREAS, the 33% requested by Class Counsel is higher than the benchmark of approximately 25%.  Some upward variance is warranted in this case to reflect consideration of the *Goldberger* factors, resulting in an appropriate fee percentage in this case of 28%.  Specifically, Class Counsel expended significant time and labor in pursuing a novel liability theory in a complex case and litigating the case through every stage except trial; and Class Counsel secured a significant settlement recovery of 69% of the total potential compensatory damages payable to class members pro rata without any claims process.  This litigation was made riskier by the fact that the action featured a relatively untested theory of liability, for which counsel had no prior model or assurance of how a court would react to the theory.  These factors combined with public policy considerations support some upward variance as the successful litigation of claims such as these deters misconduct and protects insurance consumers.

WHEREAS, when using the percentage of the fund method, the lodestar method is often used as a "cross check" on the reasonableness of the percentage awarded.  *See Goldberger*, 209 F.3d at 50.  The lodestar is calculated by multiplying the reasonable hours billed by a reasonable hourly rate, and that number can be adjusted based on factors "such as the risk of the litigation and the performance of the attorneys." *Id.* at 47.  To support the calculation of the lodestar,

"counsel must submit evidence providing a factual basis for the award in the form of contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Uribe v. Prestige Car Care of NY Inc.*, No. 23 Civ. 1853, 2023 WL 5917550, at *1 (S.D.N.Y. Aug. 9, 2023). The evidence submitted by Plaintiffs' attorneys yields a lodestar of $5,485,782.25. A lodestar multiplier then is calculated by dividing the fee award by the lodestar. *See James v. China Grill Mgmt., Inc.*, No. 18 Civ. 455, 2019 WL 1915298, at *3 (S.D.N.Y. Apr. 30, 2019). Here, the requested fee award of $16,000,000 represents a lodestar multiplier of approximately 2.85, when the estimated time to conclude this litigation is credited. A fee award of $13,440,000 results in a lodestar multiplier of 2.45. From 2006 to 2007, courts using the lodestar method as a crosscheck have awarded fees resulting in multipliers ranging from .07 to 10.3 with a mean of 1.65 and a median of 1.34. *See* Fitzpatrick, *supra* at 833-34. From 2009 to 2013, the mean lodestar multiplier in consumer class actions was 1.32. *See* Eisenberg, *supra* at 965. The multiplier in this case is high, but within the range of reasonable multipliers, as courts often approve a lodestar multiplier in excess of 1, which represents a fee award in excess of the billable amount. *See, e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, No. 10 Civ. 6950, 2023 WL 7325264, at *5 (S.D.N.Y. Nov. 7, 2023) (approving a multiplier of 1.52 in an employment discrimination case); *Pantelyat v. Bank of Am., N.A.*, No. 16 Civ. 8964, 2019 WL 402854, at *10 (S.D.N.Y. Jan. 31, 2019) (finding "a multiplier of 4.89 falls within the realm of reasonableness" in a consumer class action).

  WHEREAS, although Class Counsel asserts that a one-third fee is the norm and most common result in the Second Circuit, this assertion is not supported by empirical data. *See Espinal v. Victor's Café 52nd St., Inc.*, No. 16 Civ. 8057, 2019 WL 5425475, at *2 (S.D.N.Y. Oct. 23, 2019) (reviewing settlement data and concluding that, while "fee percentage awards as

high as one-third of a settlement fund are not unheard of," such awards are the upper bound of the range and, by most metrics, lower percentages are the norm). A larger upward deviation from the benchmark of 25% is not warranted.

### Service Awards

WHEREAS, courts have the discretion to approve reasonable service awards for class representatives in class action settlements. *See, e.g.*, *Hyland v. Navient Corp.*, 48 F.4th 110, 124 (2d Cir. 2022), *cert. denied sub nom. Yeatman v. Hyland*, 143 S. Ct. 1747 (2023), *and cert. denied sub nom. Carson v. Hyland*, 143 S. Ct. 1747 (2023). However, the Second Circuit has called service awards' propriety into question, noting that the basis for such awards is "at best dubious." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 723 (2d Cir. 2023). Rule 23 requires that courts reject awards "that are excessive compared to the service provided by the class representative or that are unfair to the absent class members," but permits awards that are "reasonable and promote equity between class representatives and absent class members." *Moses*, 79 F.4th at 245 (referencing Fed. R. Civ. P. 23(e)(2)(D)); *id.* at 254 ("We decline to depart from Rule 23's mandate, which permits fair and appropriate incentive awards.").

WHEREAS, courts generally rely on four factors when considering whether the proposed service awards are reasonable: "(1) the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, (2) the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), (3) any other burdens sustained by that plaintiff and, of course, (4) the ultimate recovery." *Fikes*, 62 F.4th at 721. Applying these factors, courts in some circumstances have approved large service awards and in other

5

circumstances denied or decreased an award as appropriate. *See, e.g.*, *Chen-Oster*, 2023 WL 7325264, at *6-7 (approving $250,000 service awards for each of four class representatives, due to the representatives' unique contributions, assumption of professional risk and expenditure of over 5,000 hours on the litigation); *Reynolds v. Marymount Manhattan Coll.*, No. 22 Civ. 06846, 2023 WL 6977635, at *3 (S.D.N.Y. Oct. 23, 2023) (justifying a reduced service award -- from $3,500 to $1,000 each -- as comparable to recovery for ordinary losses and "significantly less" than recovery for documented losses, while still reflecting class representatives' efforts and special circumstances). Other courts deny service awards entirely. *See, e.g.*, *Delcid v. TCP Hot Acquisition LLC*, No. 21 Civ. 9569, 2023 WL 3144169, at *4 (S.D.N.Y. Apr. 28, 2023) (denying service awards in a products liability case); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18 Civ. 8472, 2022 WL 2063864, at *23 (S.D.N.Y. June 8, 2022) (denying service awards in a consumer class action).

WHEREAS, Plaintiffs request awards totaling $70,000 for the seven named Plaintiffs combined, or $10,000 each.

WHEREAS, the *Fikes* factors support reduced service awards, in the amount of $3,000 each, plus the specific lost wages or out-of-pocket costs claimed by each representative, for a total of 28,300. Specifically, $3,900 is awarded to John Plotts; $3,400 is awarded to Kevin Lukasik; $5,750 is awarded to Lorenzo Costa; $3,350 is awarded to Lori Lippa; $3,900 is awarded to Michael Verardo; $5,000 is awarded to Zachary Goodier and $3,000 is awarded to James England. First, special circumstances are not present. Plaintiffs have not incurred any special risks in litigating this action against their car insurer, unlike in cases featuring sensitive personal information or difficult inter-party relationships. *Cf. Reynolds*, 2023 WL 6977635, at *3 (noting special circumstances present in the case included "the personal risk involved in

bringing suit against one's alma mater and the burden of litigating under one's own name after suffering from identity-theft and personal-privacy issues after a data breach").

WHEREAS, as to the second and third factors, Plaintiffs have demonstrated that they expended time and effort on this litigation, but have not shown any particular expertise critical to the resolution of the case nor that they sustained any substantial burdens. Plaintiffs each filed declarations stating, with nearly identical language, that they participated in calls regarding case updates, helped draft complaints, discussed filings, searched for documents for discovery, prepared and sat for deposition and prepared for trial. The declarations also state that the Plaintiffs have spent between approximately 50 and 90 hours each on this litigation over the entire lifetime of the action, which included time off work that resulted in lost wages of $350 to $2,750. In some cases, Plaintiffs also state that they needed to arrange alternate childcare due to their time spent on the case, but do not provide specifics. Plaintiffs' declarations support that they contributed to the litigation, but the lack of individualized detail undermines Plaintiffs' request for such large awards.

WHEREAS, the fourth factor supports reduced service awards. Counsel obtained a strong recovery for the class, but awards of $10,000 -- twenty-eight times the recovery of the average class member -- would be excessive.

WHEREAS, the cases cited in support of the service awards are not to the contrary. Those cases either pre-date *Fikes* and *Moses* or do not include substantive analysis of the propriety of the requested service awards. It is hereby

**ORDERED** that attorneys' fees in the amount of $13,440,000 are awarded to Class Counsel, shall be paid from the settlement fund and shall not be paid until class members have received the first distribution of their cash awards. It is further

**ORDERED** that Class Counsel shall be reimbursed for expenses in the amount of $342,766.26, which the Court finds reasonably were expended litigating and resolving the lawsuit.  This amount shall be paid from the settlement fund and may be paid immediately.  It is further

**ORDERED** that the request for service awards is **GRANTED** in part and **DENIED** in part.  Service awards are granted in the amount of $3,000 plus lost wages and costs per representative plaintiff, for a total of $28,300.  The class representatives' service awards shall be paid from the settlement fund and shall not be paid until a majority of class members have received their cash awards.

Dated: March 20, 2025
       New York, New York

                                                **LORNA G. SCHOFIELD**
                                            **UNITED STATES DISTRICT JUDGE**